ESTATE OF CHARLES M. THORP, DECEASED, GOLDIE D. THORP AND FIDELITY TRUST COMPANY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7244.   Promulgated October 7, 1946.

*Lee W. Eckels, Esq.*, for the petitioners.
*Stanley L. Drexler, Esq.*, for the respondent.

### OPINION.

LEECH, *Judge*: This controversy involves a deficiency in estate tax amounting to $118,747.12.   The sole contested issue is whether the respondent erred in including the value of the trust remainders in decedent's gross estate.   All the facts were stipulated and are adopted as stipulated.

Petitioners are the duly qualified executors of the estate of Charles M. Thorp, deceased, a resident of Pittsburgh, Pennsylvania, who died testate on December 14, 1942.   The Federal estate tax return was filed with the collector of internal revenue for the twenty-third Pennsylvania district, at Pittsburgh, Pennsylvania.

On September 27, 1918, the decedent executed a trust agreement in which his wife, Jessie B. Thorp, was named trustee and life beneficiary of all the income.   The material provisions of the trust agreement are contained in paragraphs 5 and 6, reading as follows:

5. After the death of Jessie B. Thorp, said income shall be paid to our six children, Margaret T. Stewart, George B. Thorp, Evelyn L. Thorp, Charles M. Thorp, Jr., Jessie M. Thorp, and Sara Eleanore Thorp, in equal shares, during their respective lives.   Unless sooner terminated as hereinafter set forth the trust shall continue until the death of the last survivor of said six children. Upon the death of each child during the continuance of the trust the income previously paid to him or her shall thereafter be paid to his or her children, if any, and if there be none then to my surviving children and grandchildren per stirpes.   Upon the death of the last surviving one of my said six children the trust shall cease absolutely, and all property held in trust shall be assigned, transferred and delivered to my grandchildren then living and the children then living of any grandchildren then dead, per stirpes, absolutely free and clear of all trusts and conditions.

6. The trust may, however, be wholly terminated at any time, or in part from time to time, in the following manner.   If all the beneficiaries hereinabove named, that is, my wife and my six children, or said children alone after my wife's

death, or the survivors of them, shall request a termination in writing directed to the trustees and to me, and I shall in writing delivered [*sic*] to the trustees consent thereto, the trust shall, upon delivery of such request and consent to the trustees, be terminated either wholly or in part, or as to the interest in whole or in part of any of said beneficiaries, in accordance with such request and consent, and the trust property shall be released in whole or in part accordingly, and the portion so released shall be assigned, transferred and conveyed to the beneficiary or beneficiaries designated in said written request to be his or her absolute property, free and clear of all trusts and conditions; provided, however, that if such termination is made before the death of my wife, the property released shall be equally divided between her and the children, that is, one-half to her and one-half to the children or the child whose portion is released. If after her death, the property released shall go to the children or the child whose portion is released.

The instrument contained no other power to alter, amend, or revoke such agreement.

The decedent's wife, Jessie B. Thorp, and one of the children named as a life beneficiary under the trust agreement, predeceased him. During the period from the creation of the trust to the death of the decedent the beneficiaries did not request a termination as to all or any part of the trust. At decedent's death the fair market value of the trust corpus was $285,527 and the value of the remainder interests after the lives of the surviving five children who were life tenants was $129,865.67.

The respondent included in the decedent's gross estate the value of the trust remainders, pursuant to the provisions of section 811 (d) (2) of the Internal Revenue Code.[1] Petitioners contend that such action is erroneous for two reasons, to wit: (a) The decedent did not reserve to himself a power of termination within the meaning of the section; and (b) if it is held to be a power to terminate, a retroactive application of section 811 (d) (2) would violate the due process clause of the Federal Constitution.

We find no merit in either of those contentions. Under paragraph 6 of the trust instrument the request to terminate was to be initiated by the life beneficiaries, but the termination could be consummated

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States.

    *      *      *      *      *      *      *

(d) REVOCABLE TRANSFERS.

    *      *      *      *      *      *      *

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

only by the act of the settlor. The trust instrument reserved to the settlor, during his lifetime, the right to control the vital act necessary to terminate it. We think the reservation of such a power clearly subjects the transfer to the provisions of section 811 (d) (2) of the code. *Commissioner* v. *Estate of Holmes*, 326 U. S. 480.

The power to terminate affected only the remainder interests. Since the exercise of such power could cut off those interests, their transfer was not complete until the death of the settlor put an end to its existence. Hence, there is here present no retroactive application of section 811 (d) (2) and the due process clause of the Fifth Amendment is not infringed. *Porter* v. *Commissioner*, 288 U. S. 436; *Commissioner* v. *Estate of Holmes, supra; Union Trust Co. of Pittsburgh* v. *Driscoll*, 138 Fed. (2d) 152; certiorari denied, 321 U. S. 764.

Petitioners argue that *Helvering* v. *Helmholz*, 296 U. S. 93, prevents this conclusion. We do not agree. In that case the respondent proposed to include, as here, the value of remainders only in an *inter vivos* trust. The right to terminate was given by the trust to "*all of the then beneficiaries, other than testamentary appointees.*" (Italics supplied.) The settlor was the beneficiary of the income for her life. She could appoint the income for the duration of the trust following her life by will, and in the absence of such appointment the income went to her issue. The beneficiaries of the remainders were to be the income beneficiaries when the trust terminated. The appointees by will could not, under the trust, take the remainders. So, in that case, the termination could be brought about only by *all* the beneficiaries in the remainders who were living when the trust terminated. Here the grandchildren, who were the remaindermen under the trust, were given no rights in its termination. In other words only the settlor's wife, the principal life beneficiary, and the children, the secondary life beneficiaries, or the survivors of them, had that right. And in the event of termination, and only in such event, could those life beneficiaries take remainder interests.

Moreover, in the *Helmholz* case, although the settlor, as a beneficiary, was included among those to whom the right to terminate was jointly granted, the right of beneficiaries surviving her death to terminate continued. See *Commissioner* v. *Allen*, 108 Fed. (2d) 961; certiorari denied, 309 U. S. 680. Here the converse is true. The settlor was a necessary party to any termination. Thus the right to terminate ended with his death. See *Chickering* v. *Commissioner*, 118 Fed. (2d) 254; certiorari denied, 314 U. S. 636.

There is another difference which distinguishes this case from the *Helmholz* case. The Supreme Court there held that, under pertinent Wisconsin law, the termination of a trust by the beneficiaries who were living at the time of termination was legally possible. The law

of Pennsylvania, which is controlling here, is otherwise. In that state the rule is recognized that a trust can be terminated only by consent of *all* the beneficiaries and, where there are interests which can not be determined until the happening of a certain event, the consent of the then living beneficiaries is not sufficient. *King* v. *York Trust Co.*, 278 Pa. 141; 122 Atl. 227; *In re Rickenbach's Estate*, 348 Pa. 121; 34 Atl. (2d) 527; *In re Lewis' Estate*, 231 Pa. 60; 79 Atl. 921; *In re Shirk's Estate*, 242 Pa. 95; 88 Atl. 873. In *Virginia L. Houghteling et al., Executors*, 40 B. T. A. 508, this Court definitely recognized this distinction. Since the consent of the holders of the remainder interests was not required to terminate the trust here, it is within the rationale of that case, and thus distinguishable from the *Helmholz* case. Moreover, the present record is silent not only as to the existence of grandchildren, who were the remaindermen, but also as to whether if none, there never could be any.

It may not be amiss to add a word in connection with the second position of petitioners. That position is that to include the present remainder in the estate of the decedent for estate tax purposes would violate the prohibition of the Fifth Amendment to the Constitution. They rely chiefly upon *White* v. *Poor*, 296 U. S. 98, and *Helvering* v. *Helmholz, supra.* However, and at all events, in both those cases the powers reserved were exercisable only with the consent of persons adversely interested in such exercise. It was thus held that the prospective transfers were complete when the trusts were created. That being so, of course, to tax such property for estate tax purposes as belonging to the respective decedent transferors as of a later date, would offend the Fifth Amendment. *Chickering* v. *Commissioner, supra; Union Trust Co. of Pittsburgh* v. *Driscoll, supra.* Here the persons in whom the right to terminate was reserved were obviously not adversely interested in the exercise of that right as to the remainder—which is the only matter basing the present controversy. Certainly, this is true, at least, after the death of the wife of decedent, who had died before decedent. *David J. Lit et al., Executors*, 28 B. T. A. 853; affd., 72 Fed. (2d) 551. His power in connection with the termination of the trust was therefore just as complete for present purposes at his death as if it existed in him alone. And the transfer was thus incomplete so long as that reserved power existed. *Estate of Sanford* v. *Commissioner*, 308 U. S. 39; *Reinecke* v. *Smith*, 289 U. S. 172; *Mackay* v. *Commissioner*, 94 Fed. (2d) 558.

The respondent properly included the value of the trust remainders in the decedent's gross estate for tax purposes. Other issues having been adjusted by the stipulation of the parties,

*Decision will be entered under Rule 50.*