ESTELLE MAY AFFELDER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7430. Promulgated November 27, 1946.

*S. Leo Ruslander, Esq.,* for the petitioner.
*Homer Benson, Esq.,* for the respondent.

OPINION.

LEECH, *Judge*: Petitioner's first contention is that for gift tax purposes the total value of the assets transferred to the trust must be reduced by the amount of the gift tax which was occasioned by the transfer and was paid by the trustee under directions by petitioner and her three children, who were the sole beneficiaries and the only parties in interest. The argument is that the present situation is similar to that of a conveyance of property by gift which is subject to a mortgage, in which case the rule is that the gift is that of only the equity in the property. There, consequently, the total value of the property, the subject of the gift, must be reduced by the amount of the encumbrance and gift tax computed upon the remainder. *Fred G. Gruen*, 1 T. C. 130; *D. S. Jackman*, 44 B. T. A. 704; *Commissioner* v. *Procter*, 142 Fed. (2d) 824.

Petitioner concedes that the necessary factual premise for this conclusion is that the gift property when transferred be subject to an encumbrance or becomes so by reason of a legally enforceable condition attached to the gift, i. e., subjecting the property transferred to the burden of the tax. It is urged that the existence of the latter fact is established here in that (1) the gift in trust left petitioner, as donor. without funds from which to pay the tax and that petitioner's three children were without income other than the annuities of $2,400 granted each under the trust, and (2) a verbal agreement was made prior to December 27, 1941, the date of the amendment of the trust, that the gift tax should be paid by the trustee out of the trust corpus.

Upon the record we can not find that either of these two conclusions of fact is justified. As to whether petitioner was without means to pay the tax when due, the evidence is that the original conveyance of the property by the first deed of trust on May 10, 1932, included substantially all of the assets possessed by the petitioner. It is noted, however, that petitioner did not surrender all interest in the assets. She retained for her lifetime the income over and above $7,200, the amount necessary to pay annuities to her three children. The trust corpus was large and the only indication in the record as to income is that petitioner received a substantial yearly income from the trust, the amount at the time of the amendment thereof being in excess of $10,000 a year. The testimony of petitioner and her brother is that

she did not have enough assets in 1941 to pay the tax of $36,345.29, but no attempt was made to show just what assets she did possess. Certainly one with a life income of such amount from a trust of this character is not without property. As to the alleged oral agreement for payment of gift taxes by the trustee, although this was the testimony of petitioner and her brother, it is not only vague and indefinite, but, in our opinion, is impossible to reconcile with other facts established beyond dispute. The first of these facts is that if such an agreement were made, it is strange, to say the least, that no mention of it was made in the trust instrument itself. The provisions of that instrument, although dealing specifically with the authority and duty of the trustee to pay Federal taxes, are limited to such taxes as may accrue by reason of petitioner's death. Secondly, petitioner did not even file a timely gift tax return, although she claims an agreement made with respect to the payment of gift taxes. Later, in 1943, when petitioner filed a belated return, her letter to the collector stated that she was unaware of the fact that a gift tax was due.

We conclude that the trust corpus, when received by the trustee here, was not reduced by the existence of an encumbrance which the trust estate, in any event, was bound to pay. The trust made the payment only because directed to do so by all of the beneficiaries, who, by their joint action, could dispose of the trust corpus in any way they saw fit. This, of course, distinguishes the situation here from that presented in the *Gruen*, *Jackman*, and *Procter* cases, *supra*. They are, therefore, not in point.

We sustain the action of respondent in refusing to reduce the value of the gift by the amount of the resulting gift tax.

The question raised in the second issue is not new. Respondent, in computing the commuted value of the remainder interests of the beneficiaries in that part of the trust corpus with respect to which the petitioner retained the income for life, and in computing the amount of capital necessary to produce the annuities payable to petitioner's children under the trust instrument, used table A, as set out in Regulations 108, section 86.19. This table is what is known as the Actuaries or Combined Experience Table. Under the regulations of respondent, it has been for many years the table used by the Treasury in the computation of the value of annuities or deferred interests. That is still so. Petitioner argues for the use of a table known as the American Annuitants Ultimate Table. Petitioner argues that the table used by respondent under the regulations is a British table, prepared between 1838 and 1844, and is no longer used by insurance companies because it is deemed outmoded by reason of the fact that life expectancy now is longer than at the time the British table was prepared. In fact, the petitioner's expert actuarial witness stated that insurance companies

are now not even using the American Annuitants Ultimate Table, which was compiled about 1920, but use an even later table which applies a still longer life expectancy. Petitioner, however, contends only for the use of the American Annuitants Ultimate Table.

The question between the parties is whether respondent was in error in using the table set out in his regulations, and consistently used for years, and whether the computation should be made in accordance with a later table prepared by the insurance companies for determining the cost of annuities sold by them.

Petitioner relies upon our decision in *Anna L. Raymond*, 40 B. T. A. 244; affd., 114 Fed. (2d) 140; certiorari denied, 311 U. S. 710. In that case we reviewed the history of the tables involved in the question here. It was held that, on the evidence there, the American Annuitants Ultimate Table should be used for the purpose of the valuation there necessary. However, the question in that case was not the same as that here presented. In that case the petitioner transferred property to several charities in return for the agreement by each of the charities to pay her a specified annuity. In determining what portion of the transfer was a gift to charity, we held that such portion was the excess of the value of the property conveyed above what it would cost the respective charities to purchase an annuity in the agreed amount from a standard insurance company. Such amounts necessarily had to be computed by the use of the tables of mortality used by those insurance companies, since it was their prices which had to be determined. Here, no purchase of an annuity from an insurance company is involved. Rather the question is merely whether, in computing the value of estates here transferred, respondent was in error in using the table specified in his regulations, which is, admittedly, a standard table of mortality.

The question is the same as that in *Henry F. du Pont*, 2 T. C. 246, in which the petitioner also relied upon *Anna L. Raymond, supra.* In the *du Pont* case we expressly approved the use of table A, set out in Regulations 108, section 86.19. On the authority of that case we hold that there was no error on the part of respondent in his use of the table set out in his regulations.

Petitioner makes the further contention that in the use of this table respondent has used the wrong factor in computing the amount of capital necessary to produce the annuities totaling $7,200. Upon examination we find that the factor used is 1.0248, which is the factor set out in the table for computing the necessary capital where the annuities are to be paid quarterly. The payments were provided to be made quarterly under the trust instrument involved. We hold the computation to be correct.

The third issue is whether petitioner is entitled to three exclusions of $4,000 each in determining the net gift by reason of the fact that her three children were beneficiaries of the gift in trust. Section 1003

of the Internal Revenue Code, as amended by section 454 of the Revenue Act of 1942, provides:

In the case of gifts (other than gifts in trust or of future interests in property) made to any person by the donor during the calendar year 1939 and subsequent calendar years prior to 1943, the first $4,000 of such gifts to such persons shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

The parties are in agreement that the gift was effected December 27, 1941, when the amended trust instrument was executed. It can not be disputed that the gift was in trust. Thus, under the specific provision of the statute, no exclusion may be allowed. Respondent's action in denying the exclusions is approved.

The remaining issue is whether respondent was correct when he included in the gift interest accrued as of the date of the gift upon certain bonds, a part of the corpus of the trust, which interest had not then been paid.

Petitioner argues that such interest, having already accrued, constituted income belonging to her which should not be included in the value of the securities passing to the trustee.

It is difficult to understand the basis for this contention. Assuming such interest did belong and was taxable as income to petitioner, donor,[1] that would not dispose of our question. The controversy here is as to the value of a gift for gift tax purposes. The trust agreement, as amended December 27, 1941, contains no reservation to petitioner of the interest upon the bonds transferred to the trustee. Thus the gift included not only the bonds, but accrued, though unmatured, interest thereon. Cf. *Rebekah C. Schoonmaker*, 39 B. T. A. 496; *Annie A. Colby*, 45 B. T. A. 536. Certainly, therefore, the value of the gift would include the value of that interest, as well as the bonds.

*Decision will be entered for the respondent.*

---

[1] Cf. *Estate of S. W. Anthony*, 5 T. C. 752; affd., 155 Fed. (2d) 980.