ESTATE OF KOERT BARTMAN, DECEASED, KOERT BARTMAN, JR., EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12578. Promulgated June 9, 1948.

*James B. Martin, Esq.,* and *Leland P. Miller, Esq.,* for the petitioner.
*R. L. Greene, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: Petitioner's first argument is that none of the gifts in issue was complete so as to occasion the incidence of gift tax. Reliance is placed upon *Mabel G. Adams*, 44 B. T. A. 1091, and *Elizabeth S. Hettler*, 5 T. C. 1079, and in an attempt to bring this case within the scope of those, evidence was presented by petitioner with respect to the gross and net income, in comparatively small amounts, derived from the farming operations on the three gift tracts during the first two or three years after the gifts. The petitioner's point is that, by means of the annuity obligations executed by the three donees of the tracts, the decedent retained a right of invasion of the gift to the full extent, or to revest the freehold in himself through forfeiture.

The *Adams* and *Hettler* cases are readily distinguishable on their facts. In *Adams* the various powers and rights retained by the trustor

were so extensive that they might easily consume the entire corpus of the trust. In *Hettler* the transferee was unable to pay the agreed annuity from his separate estate. The transferred property did not produce sufficient income for that purpose, and neither the transferor nor the transferee intended that the trust corpus should be used to pay the annuity. The parties did intend that there should be an immediate default in the annuity payments, which is exactly what happened, so that the transferor would at once have power, as reserved in the trust instrument, to revest the entire trust property in herself. No such showing appears in this case. The annuity obligations were the personal obligations of the transferees. They were not limited to payment either from the transferred properties or from the income to be derived from the operation of such properties. The obligations to pay the annuities existed regardless of whether the properties produced any income or whether the transferees sold or otherwise disposed of such properties. It does not appear that any of the transferees was unable to pay the annuities.

The mere fact that for security purposes the annuity obligation was made a lien on the property does not negative the completeness of the gift; nor does it, under the facts here present, amount to a power in the decedent to revest title to the property in himself or to change the beneficial enjoyment thereof. At most, the lien would protect the annuity only to the extent of the unpaid balance, and the deduction of the value of the annuity gives adequate recognition to that fact. It is only to the extent of the excess of the value of the transferred property over the value of the consideration received by the decedent that the transfer is taxed as a gift under section 1002 of the Internal Revenue Code. We hold that to that extent the properties transferred were put beyond the dominion and control of the decedent and were completed gifts. *Smith* v. *Shaughnessy*, 318 U. S. 176; *Robinette* v. *Helvering*, 318 U. S. 184; *Estate of Sarah A. Bergan*, 1 T. C. 543; *Daisy B. Plummer*, 2 T. C. 263; Regulations 108, sec. 86.3.

We shall not dwell upon the petitioner's second point, that the decedent's wife, by joining in the deeds, made a gift of her inchoate dower rights, and that the value thereof should be deducted in determining the amount of the decedent's gifts. It is recognized in the petitioner's brief that *Correlia Mason Thompson*, 37 B. T. A. 793, is a direct ruling to the contrary; and, while we have carefully considered petitioner's elaborate arguments in this connection, we adhere to the ruling in that case. See also *Hopkins* v. *Magruder*, 34 Fed. Supp. 381; cf. *Frank J. Digan*, 35 B. T. A. 256. This makes unnecessary a consideration of the further problem as to whether such inchoate right of dower is susceptible of actuarial valuation, though because of the many contingencies other than survivorship (see Illinois Revised Statutes, ch. 3, secs. 18–25) through which the right may be barred or defeated, there would

seem to be equally as much difficulty in the way of an actuarial valuation as there was in valuing the "contingent reversionary remainder" involved in *Robinette* v. *Helvering, supra.*

We next come to the question as to how much the value of the gift properties should be reduced on account of the annuities payable by the donees; in other words, by how much did the value of the property exceed the consideration received by the decedent. Petitioner is of the view that the value of the annuities to both the decedent and his wife, Sunkea Bartman, in case she survived him, should be deducted. The respondent took into account only the value of the annuities to the decedent and did not deduct the value of the contingent annuities payable to his wife. Practically the only argument the petitioner makes on brief is that the respondent's method is "wholly indefensible as a matter of fact and law." We do not agree. The gift tax is an excise imposed, not upon the receipt of property by various donees, but upon the donor's act of making a transfer; and it is measured by the value of the property passing from the donor. Regulations 108, sec. 86.3. The contingent annuities to Sunkea Bartman were not consideration flowing to the decedent. Their value, whatever it might be, was a value which passed irrevocably from the dominion and control of the decedent. It would go to decedent's wife only if she survived him; otherwise it would be retained by the children. In no event would it revert to the decedent. The annuities for his own life were all that he would get. We accordingly hold that no deduction should be made on account of the contingent annuities for the decedent's wife.

The respondent's valuation of the annuities payable to the decedent for his life ($3,202.58 for each of the three annuities) was based upon Table A following section 86.19 of Gift Tax Regulations 108, which in turn is predicated upon the Actuaries' or Combined Experience Mortality Table, as extended, with interest at 4 per cent. Petitioner contends for a valuation of $3,788 based on the Combined Annuity Mortality Table at 3 per cent interest. Petitioner also produced evidence of computations under the U. S. Life Tables of 1939–1941—Forecast (1943) at 2½ per cent and 3 per cent interest, showing respective valuations of $3,647 and $3,573, and under the U. S. Life Tables 1939–1941 (Total Whites-Makehamized) with interest at 2½ per cent and 3 per cent, showing respective valuations of $3,503 and $3,432. An actuarial expert called by the petitioner testified that the Combined Annuity Mortality Table would be his first choice for valuing the annuities in question, and that the U. S. Life Tables would be his second choice, because these tables were more recent than the Actuaries' or Combined Experience Mortality Table. He also testified that the Combined Annuity Mortality Table was designed especially to fit the particular needs of insurance companies, though

it had a wider utility, and that insurance companies are now using 2½ or 3 per cent interest in their calculations.

Respondent also called an actuarial expert as his witness, who testified that the tables used by the petitioner's experts were used principally by commercial life insurance companies for writing annuities and were not suitable for use in valuing such annuities as those here involved; that insurance companies take into consideration the element of self selection in writing annuities; and that they use whatever tables are best suited for their particular needs. He further stated that 16 states use the Actuaries' or Combined Experience Mortality Table for inheritance tax calculations; that no state uses the Combined Annuity Mortality Table for such purposes; that Table A in the Commissioner's Regulations is the most suitable for the purpose of valuing annuities like those here involved; that the value determined by the Commissioner was liberal in petitioner's favor, because if proper adjustment were made for the decedent's exact age and for the fact that the first payment under the annuity is deferred approximately 15 months, the value of each annuity would not exceed $2,853.12.

Petitioner cites *Anna L. Raymond*, 40 B. T. A. 244, in support of the valuation contended for by petitioner. In *Estate of Charles H. Hart*, 1 T. C. 989, however, we approved the use of the Commissioner's table to compute the value of a private annuity, pointing out that, though there was evidence that it would cost more to purchase the annuity from an insurance company, the estate tax regulations differentiate between annuities issued by insurance companies and all other annuities. The same is true of the gift tax regulations. Regulations 108, sec. 86.19 (*f*) and (*i*). See also *Estelle May Affelder*, 7 T. C. 1190; *Estate of Sarah A. Bergan, supra; cf. Henry F. Dupont*, 2 T. C. 246; *Daisy B. Plummer, supra*. We think the petitioner here has not proved the respondent's valuation to be erroneous, and we accordingly hold that the value of each annuity to the decedent was $3,202.58, as the respondent has determined.

The final question is whether there should be a reduction in the value of the decedent's gifts because of the $5,000 note and mortgage executed by each donee of the land. Respondent made no allowance for these items in his determination, and on brief he contends that it is unnecessary to do more in valuing the decedent's gifts than to take the value of the real property passing from him, less the consideration flowing back to him in the form of the annuity for his life. Petitioner contends that these three notes and mortgages, totaling $15,000, were carved out of the decedent's transfers as a separate gift in future to Koert Bartman, Jr., but that not until the notes are paid is the gift complete, relying upon G. C. M. 16460, XV-1 C. B. 369. We agree

with the petitioner's view that the notes and mortgages were a separate gift to Koert, Jr. That is clearly the substance of the transaction. The evidence shows that decedent's intention was to make a separate gift to Koert, Jr., and that, since Koert, Jr., already had sufficient land in his own right, decedent wanted to provide for him in a different way. We do not agree, however, with the contention that the gift was not complete when made. G. C. M. 16460 deals with a gift of a donor's own note or check and holds that the gift is not complete until the note or check is paid, negotiated, or transferred for value. It obviously has no application here, where the decedent transferred to Koert, Jr., not the decedent's own notes and mortgages, but those of the grantees of the land. We think there can be no question but that the gift to Koert, Jr., was complete when made and subject to the gift tax. Indeed, the parties have stipulated that the value of each of the notes was $5,000 on November 27, 1943.

We hold, therefore, that the respondent did not err in failing to reduce the amount of the decedent's gifts by the value of these three notes and mortgages. He should, however, have allowed one additional exclusion of $3,000 for the gift to Koert, Jr. With this modification we approve his determination.

*Decision will be entered under Rule 50.*