ESTATE OF ABRAHAM KOSHLAND, DECEASED, JESSE KOSHLAND, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13780. Promulgated November 30, 1948.

*Samuel Taylor, Esq., Edgar Sinton, Esq.,* and *Bernard Shapiro, Esq.,* for the petitioner.

*A. J. Hurley, Esq.,* for the respondent.

OPINION.

Kern, *Judge*: The principal issue in this proceeding is whether the value of the remainder interest in the trust created and amended prior to 1924 is includible in decedent's gross estate. One of the grounds urged by respondent for inclusion is that the transfer was one in which the decedent reserved the power to alter and amend the trust within the meaning of section 811 (d) of the Internal Revenue Code [1] and the applicable regulations.[2] Petitioner seeks to meet this argument by a three-fold attack. First, it is urged that after the 1923 amendments to the trust the right to amend further encompassed

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \* \*

(d) REVOCABLE TRANSFERS.—\* \* \*

\* \* \* \* \* \* \*

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth \* \* \*.

[2] SEC. 81.20 [Regulations 105]. *Transfers with power to change the enjoyment.*

\* \* \* \* \* \* \*

(b) TAXABILITY.—The property or any interest therein transferred as described in subsection (a) shall be included in the gross estate if it comes within any one of the following paragraphs:

(1) If the transfer was made prior to the enactment of the Revenue Act of 1924 (4 : 01 p. m., eastern standard time, June 2, 1924), and the power was reserved at the time of the transfer and was exercisable by the decedent alone or in conjunction with a person or persons having no substantial adverse interest or interests in the transferred property, or if exercisable in conjunction with a person having a substantial adverse interest or with several persons some or all of whom held such an adverse interest, then to the extent of any interest or interests held by a person or persons not required to join in the exercise of the power and to the extent of any adverse interest which was not substantial.

only slight and trivial matters; second, that the right to amend was in conjunction with decedent's wife, who had a substantial adverse interest in the remainder of the trust; and, third, that the law and regulations may not be constitutionally applied to pre-1924 transfers.

Petitioner's first point is without merit. The trust instrument, as amended, contains a broad sweep of power. It was provided:

7. Power is hereby reserved during the lifetime of the said Abraham Koshland and given to the said Abraham Koshland and Estelle W. Koshland with the approval of the Trustees hereof at any time in the uncontrolled discretion of the said Abraham Koshland and Estelle W. Koshland to amend this declaration of Trust. * * *

Petitioner would have us construe this language narrowly, since certain provisos appearing in the paragraph prior to amendment were deleted. Rather than an aid to petitioner's view, these omissions can be interpreted as clothing decedent with as broad a power as it was possible to accord him. In any event, the mere fact that no limitations appear can not be said to diminish the general power granted.

None of the cases cited to us by petitioner, of which *Theopold* v. *United States* (CCA–1), 164 Fed. (2d) 404, is an example, are in point, as none contained as general a power of amendment as retained by this decedent. In the *Theopold* case, the power was limited to amend the trust instrument only "so that it will more clearly express my actual intentions * * *." The Circuit Court recognized that the trust instrument was inexpertly drawn and the trustor wished to retain the power to settle meaning. It further observed:

* * * Certainly if he had wished to retain broad powers of amendment as to substance he could have said so very simply by merely reserving a general power to alter, amend or revoke. * * *

Such a general power as referred to by the court was here retained.

Petitioner next contends that, irrespective of the scope of the power of amendment, it could not be exercised except in conjunction with a person having a substantial adverse interest. This raises the question of whether the life tenant, decedent's wife, can be said to have a substantial adverse interest in the remainder.[3] We believe that she did not.

---

[3] The question of whether the decedent's wife had a substantial adverse interest in this pre-1924 *inter vivos* transfer becomes important under the established doctrine of *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339. It was there recognized that a transfer in trust, where the settlor reserved to himself alone or to himself with a person having a nonadverse interest, was not a completed transfer because the property did not pass completely out of his control until his death, and as such was includible in the decedent's gross estate even prior to the enactment of the Revenue Act of 1924. The taxing statute is not unconstitutional as to trusts created prior to its enactment if the transfers thereunder are incomplete. *Chase National Bank* v. *United States*, 278 U. S. 327. Section 302 (d) of the Revenue Act of 1924 first introduced the provision that if the settlor in conjunction with any person reserved the right to revoke or otherwise materially change the transferred interests, the conveyance was taxable. As to transfers after that date, the "substantial adverse interest" requirement is immaterial. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85.

Petitioner's argument, with which we can not agree, is that decedent's wife had a substantial adverse interest in the remainder, since she possessed the right during her lifetime to have corpus invaded if it became necessary to assure her the receipt of $15,000 annually, and it was to her benefit to retain her sons as remaindermen. This approach loses sight of the meaning and significance of the "substantial adverse interest" concept. See *Flood* v. *United States* (CCA-1), 133 Fed. (2d) 173; *Union Trust Co. of Pittsburgh* v. *Driscoll* (CCA-3), 138 Fed. (2d) 152; certiorari denied, 321 U. S. 764.

Petitioner relies principally upon *Commissioner* v. *Kaplan* (CCA-1), 102 Fed. (2d) 329, and seeks to distinguish *David J. Lit et al., Executors*, 28 B. T. A. 853; affd., 72 Fed. (2d) 551, and *Estate of Charles M. Thorp*, 7 T. C. 921; affd., 164 Fed. (2d) 966; certiorari denied, 333 U. S. 843. In the *Kaplan* case, decedent created a trust in 1923, of which he was trustee and his wife life beneficiary, with remainders over after his and his wife's deaths to their children. The trust could be amended and revoked "by the Trustees," assented to by the life beneficiary. Under these facts, it was held that decedent's wife had a substantial adverse interest in the remainder, and hence it was not includible in decedent's gross estate. Among the reasons assigned to support this conclusion was the following:

In this connection it is to be noted that Mr. Kaplan [decedent] as an individual reserved no right of revocation but rather granted these rights to the trustee then in office. This fact, if not controlling, supports the conclusion that the trust was, when made, a fully completed transfer of all interests in the trust estate. * * *

The Circuit Court distinguished the *Lit* case:

*Lit et al.* v. *Commissioner of Internal Revenue*, 3 Cir., 72 F. 2d 551, relied upon by the petitioner, was a case where the remainder interest was held properly included, the trust instrument reserving in the settlor the right of revocation with the assent of the life beneficiary. Apart from the distinguishing fact that the donor expressly reserved the right of revocation, it appears, also, that the trust was created in 1927 and the Revenue Act of 1926, sec. 302 (d), 44 Stat. 71, was applied. * * *

In the *Lit* case, the decedent in 1927 created a trust the income of which was to be paid to his wife for life, and after the death of both remainders were given to others. The power of amendment and revocation was retained by decedent in his individual capacity, in which his wife was required to join. It was there held that the value of the life estate vested in the wife should not be included as part of decedent's gross estate, but the remainder interest was includible; the wife was said to have a nonadverse interest in the remainder, and trust was deemed revocable within the meaning of section 302 (d) of the Revenue Act of 1926. It was there said by us:

* * * All that the settlor had to do in order to exercise this reserved power of revocation as to David Jack Lit was to do it in conjunction with Rosa L. Lit

[his wife], who was in no sense an adverse interest as to the remainder interest of the trust estate. * * *

While it is true that in the *Porter* case the settlor of the trust was left free to exercise the limited power which he reserved, alone and without having to secure the consent of any one, whereas in the instant case the settlor must secure the written consent of his wife, Rosa L. Lit, still, as we have already stated, Rosa L. Lit had no interest in the remainder interest and as to that she was not an adverse interest and we think these facts bring the situation as to the remainder interest within the purview of the language of section 302 (d). * * *

The *Lit* case was cited approvingly by us in the *Thorp* case, and by the Circuit Court in its affirmance. There, decedent created a trust in 1918, reserving the power in himself to terminate the trust, cutting off the remainder interest, upon the request of the life beneficiaries. We held that the value of the transferred remainder interest was includible in decedent's gross estate under section 811 (d) (2) of the Internal Revenue Code. The Circuit Court, in its affirmance, stated:

* * * On the question whether the interests of the five children were "substantially adverse," the Tax Court said, "Here the persons in whom the right to terminate was reserved were obviously not adversely interested in the exercise of that right as to the remainder—which is the only matter basing the present controversy." Bearing in mind that by exercising their power of termination the children would have received "absolute property" in the corpus, rather than merely the income therefrom, and also the fact that there was a close family relationship, we are not prepared to say that the Tax Court erred in choosing from conflicting inferences the conclusion that their interests were not "substantially adverse." * * *

Taxpayer's further contention that a beneficiary of a trust is "adverse to the grantor * * * regardless of whether a change would benefit or injure him" not only rejects the ordinary meaning of the word "adverse," but also meets such insurmountable obstacles as *Helvering* v. *City Bank Co.*, supra at page 90, and the express language of the Tax Court in *Lit* v. *Commissioner*, 28 B. T. A. 853, 860–861 (1933), affirmed by this court in 72 F. 2d 551 [14 AFTR 481] (1934). * * *

Such cases as *Estate of Frederick S. Fish*, 45 B. T. A. 120, where the life tenant had also a power of appointment over the remainder interest, and *Mackay* v. *Commissioner* (CCA–2), 94 Fed. (2d) 558, reversing 33 B. T. A. 765, holding that a remainderman has an adverse interest in the life estates, cited to us by petitioner, are clearly distinguishable and are not in point.

Since we hold that decedent reserved to himself the power of amendment with a person whose interest was nonadverse as to that portion of the trust property sought to be included in decedent's gross estate, petitioner's constitutional argument, based upon the application of the law and regulations to pre-1924 transfers, disappears. *Estate of Charles M. Thorp, supra.* Cf. *Commissioner* v. *Kaplan, supra; Union Trust Co. of Pittsburgh* v. *Driscoll, supra.*

In view of our decision that the remainder interest is includible in decedent's gross estate, under section 811 (d), it becomes unnec-

essary to decide whether it is also includible under 811 (c) of the code. There does remain, however, one further question, i. e., the value of the interest to be included.

The parties have stipulated the fair market value of the trust estate as of the date of death. The area of disagreement is as to the value of the life interest which is to be subtracted. Petitioner contends that it is unsound to determine such value in conformity with respondent's regulations,[4] as they are based upon an obsolete mortality table, and, further, that an improper factor for quarterly payments is therein employed. The burden of proving these contentions is upon petitioner. *Estate of Charles H. Hart*, 1 T. C. 989; *Estate of Koert Bartman*, 10 T. C. 1073.

The questions petitioner raises are not new. *Estelle May Affelder*, 7 T. C. 1190; *Henry F. du Pont*, 2 T. C. 246. We have carefully considered all of the evidence introduced by petitioner. It is of the same purport as that presented by taxpayers in some of the earlier cases, and we must conclude that petitioner has not borne the burden of proof on either point.

An actuarial expert called by petitioner testified as to the history of various mortality tables, and then expressed the opinion that if he had his choice of the table to be used to value the life estate he would select the 1937 Standard Annuity Table. This table shows a life expectancy for decedent's wife of over six years more than the table embodied in respondent's regulations, and about five years more than the table approved in *Anna L. Raymond*, 40 B. T. A. 244; affd., 114 Fed. (2d) 140; certiorari denied, 311 U. S. 710, a case upon which petitioner chiefly relies. It should be observed that the latest mortality table presented indicates a life expectancy of 11.01 years for decedent's wife as compared to 10.46 years in the table incorporated in respondent's regulations.

The table petitioner urges might be worthy of further consideration if our question were the cost of an annuity from a commercial insurance company. This was the underlying problem posed in the *Raymond* case, and it was there considered proper to utilize a table that such companies were using in their annuity business. We observed in the *Bartman* case, *supra*, "that insurance companies take into consideration the element of self-selection in writing annuities; and that they use whatever tables are best suited for their particular needs." There is no showing here that the mortality of inheritors or donees closely resembles that of purchasers of annuity policies. In fact, contrary evidence appears in the record.

Whatever may be the shortcomings of the table used by respondent, cf. concurring opinion of Mellott, *J.*, in *Henry F. du Pont, supra*,

---

[4] Regulations 105, sec. 81.10 (1).

**914**

petitioner has not convinced us that the 1937 table or any other table, not embodied in respondent's regulations, must be applied in this proceeding, or that respondent's use of the Combined Experience Table in this proceeding is erroneous. *Estelle May Affelder* and *Estate of Koert Bartman*, both *supra*.

Even greater weakness pervades petitioner's argument as to the proper factor for quarterly payments. The actuarial expert testified that the factor respondent used was proper if only an annuity for a term certain were involved, but was not correct if the annuity were for life. He testified further that the value of a life annuity, payable quarterly, is less than the value of an annuity certain, payable quarterly, for a term equal to the annuitant's life expectancy. Yet the factor petitioner urges and the method of its application lead to a higher value for a life annuity. This discrepancy could not be adequately explained by petitioner, nor was there any significant evidence as to the derivation of the factor it sought to have us apply. Petitioner's view can not be sustained. *Estelle May Affelder, supra.*

*Decision will be entered under Rule 50*