GEORGE G. MCMURTRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10040. Promulgated January 24, 1951.

*A. Harding Paul, Esq.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

[1] *Morris Plan Co. of St. Joseph*, 42 B. T. A. 1190, 1195; *Earle v. Commissioner*, (CCA-2) 72 Fed. (2d) 366.

**OPINION.**

HILL, *Judge:* To determine petitioner's gift tax liability for the calendar year 1942 arising out of two transfers in trust he made in that year for the benefit of his second wife, Louise Hunt McMurtry, and his daughter, Louise Hunt McMurtry, we must first decide whether the interest he transferred to his first wife, Mabel Post McMurtry, by the transfer in trust in 1933 and the interests he transferred to

his second wife by the two trusts created in 1942 constitute gifts[1] to the extent, if any, they exceeded the respective support rights of the two wives in these trusts. The separation agreements between petitioner and each wife pursuant to which the transfers in trust were carried out make it clear that the interest thereby acquired by each wife was in consideration of her release of both her support rights and property rights arising out of the marital relationship.

Respondent's position on this issue is taken from E. T. 19, 1946–2 C. B. 166, which states:

Transfers of property pursuant to an agreement incident to divorce or legal separation are not made for an adequate and full consideration in money or money's worth to the extent that they are made in consideration of a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or other marital rights in the transferor's property or estate; to the extent that the transfers are made in satisfaction of support rights the transfers are held to be for an adequate and full consideration. The value of relinquished support rights shall be ascertained on the basis of the facts and circumstances of each individual case.

Thus, it is his contention that such portion of the three transfers in trust as was allocable to the release by each wife of her marital property rights is to be considered as not made for adequate and full consideration and therefore taxable as a gift.

Petitioner, however, emphasizes the interests received by each wife in the trusts were transferred to them pursuant to a separation agreement negotiated by independent counsel. Therefore they did not constitute gifts within the meaning of the applicable statute since they were made without donative intent but solely in consideration for the release by each wife of her presently enforceable claims to support and to property rights arising out of the marriage relationship. He cites a long line of cases decided by this Court supporting his contention starting with *Herbert Jones*, 1 T. C. 1207, and ending with *Edward B. McLean*, 11 T. C. 543. The last case specifically rejected as invalid that part of E. T. 19, *supra*, which states that release of marital property rights is not full and adequate consideration in money or money's worth.

By virtue of the Supreme Court's decisions in *Merrill* v. *Fahs*, 324 U. S. 308, and *Commissioner* v. *Wemyss*, 324 U. S. 303, it has been well established that a promise or agreement in an antenuptial prop-

---

[1] The terms of section 1002 of the Internal Revenue Code applying to the 1942 trusts and section 501 (b) of the Revenue Act of 1932 applying to the 1933 trust have the same language.

SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

erty settlement to release marital property rights is not adequate and full consideration in money or money's worth for the transfer of property within the meaning of section 1002 of the Code so that such a transfer is taxable as a gift.

It is now clear from the Supreme Court's decision in the recent case of *Harris* v. *Commissioner*, 340 U. S. 106, that the rationale of the *Merrill* and *Wemyss* cases is also applicable to postnuptial settlements, where it can be said that the transfer of property was effected by the promise or agreement of the spouses. In such an instance the transfer of property is taxable as a gift to the extent it was made in consideration for the release of marital property rights. Where the postnuptial settlement is followed by entry of a divorce decree, we have the preliminary question whether the transfer of property was founded upon the promise or agreement or upon the divorce decree. If it be determined that the divorce decree effected the transfer of property between the parties, then there is no promise or agreement concerning marital rights in property to which the principles of *Merrill* and *Wemyss* cases are applicable, and any transfers of property are free from gift tax liability.

We are faced with this preliminary question both in regard to the transfer in trust to Mabel Post McMurtry in 1933 and the two transfers in trust to Louise Hunt McMurtry in 1942, for in each instance the separation agreement between the spouses was followed by entry of a divorce decree. It is clear that where the property settlement agreement is later litigated before the divorce court, any transfers of property between husband and wife are founded on the divorce decree rather than the promise or agreement of the parties, for it is the decree which created and fixed the property rights and obligations of the parties. See *Commissioner* v. *Converse*, 163 Fed. (2d) 131. But neither of petitioner's property settlements with his wives was litigated before the divorce court. It is also established that where by the terms of the property settlement agreement its operation is conditioned in any manner upon entry of a divorce decree, then the decree and not the agreement creates and fixes the rights and obligations of the parties and effects the transfer of property between the spouses. This was the holding in *Commissioner* v. *Maresi*, 156 Fed. (2d) 929. We understand the decision of the Supreme Court in the *Harris* case to be no more than an affirmation of this principle even where the postnuptial settlement also provides that its covenants should survive the divorce decree and the decree adopted the agreement including this proviso.

We are convinced that the facts surrounding the transfer in trust to Mabel Post McMurtry and the transfers in trust to Louise Hunt McMurtry are so entirely different from the facts considered to be

decisive by the Supreme Court in the *Harris* case that our determination is not governed by that decision. The holding of the Supreme Court in *Harris* v. *Commissioner, supra,* that the transfer of property to the husband was not taxable as a gift was hinged on the fact that the effective operation of the property settlement was by its terms subject to a condition precedent, that there be an entry of a divorce decree. In the present case it is apparent from the terms of the postnuptial agreement between petitioner and Mabel Post McMurtry that its effectiveness was in no way dependent on the entry of a divorce decree. Furthermore, when she obtained a divorce, the decree failed to provide for alimony and made no mention of the separation agreement. It follows that the transfer in trust for her benefit was solely founded upon and made effective by the promise or agreement of the parties. Thus we hold that to the extent the transfer was in consideration for the release of her marital property rights, it is taxable as a gift under section 1002 of the Code.

We are equally convinced that the transfers in trust for the benefit of Louise Hunt McMurtry were founded upon and made effective by the separation agreement of the parties. The effectiveness of their agreement was in no way made dependent upon the entry of a divorce decree, nor was it executed to effect a settlement in the event a divorce should be decreed, nor was it provided that the agreement should be submitted to the divorce court for its approval, all of which facts were present in the *Harris* case. On the contrary, paragraph 7 of the agreement provided "In the event that at any time hereafter a final judgment or decree of divorce shall be rendered between the parties in a court of competent jurisdiction, * * * this agreement shall remain in full force and effect, and the provisions hereof may be embodied in such judgment or decree if the court granting such decree shall deem proper." Such language clearly indicates that petitioner and his wife intended to put into operation the terms of their property agreement completely independent of whether or not there ever was a divorce. The separation agreement did not require that its provisions be submitted to the court for approval or any judicial action and did not require that they be embodied in the decree of divorce should there be such decree. Moreover, the trust indentures for the benefit of Louise Hunt McMurtry were executed by petitioner the very same day as the agreement and in compliance therewith. Finally, unlike the *Harris* case, upon the execution of the property settlement, there was at once an existing agreement which created property rights and which either party could enforce.

Thus we are convinced that the transfers in trust to Louise Hunt McMurtry were effected by the separation and trust agreements. We reach this conclusion despite the fact that a divorce court subsequently

embodied the provisions of the agreement in the divorce decree pursuant to the permissive provision in the agreement therefor. We do not interpret the Supreme Court's decision in the *Harris* case to mean that under such circumstances the transfers would be effected by the decree. Rather we believe such facts bring the transfers within the ambit of the decision of the Supreme Court in that case, that where spouses simply undertake a voluntary, contractual division of their property interests, transfers of property between them are effected by their promise or agreement, and are thus subject to the gift tax to the extent they are in consideration for the release of marital property rights.

Our conclusion is supported by the decision of the Court of Appeals for the Second Circuit in *Commissioner* v. *Barnard*, 176 Fed. (2d) 233, on facts basically similar to those here. In that case the separation agreement provided for the payment of money to the husband in return for release of his marital rights. The agreement also stated that in the event of a decree of separation or divorce, the provisions of the agreement might be embodied in the decree, provided that no insertion in any such decree of any of the provisions of this agreement should affect or alter the terms of this agreement. Subsequently the parties were divorced, but prior to that time payment was made to the husband. The divorce decree adopted and approved the agreement. Despite such ratification of the agreement, it was held that the payment was founded on the agreement rather than the decree and was therefore taxable as a gift since the release of marital property rights was not full and adequate consideration therefor.

We therefore hold that to the extent the transfers in trust for the benefit of Louise Hunt McMurtry were in consideration for the release of her marital property rights, they are taxable as gifts.

Specific valuation questions remain to be decided in order to determine petitioner's gift tax liability for 1942. We must ascertain the value of the respective interests received by petitioner's wives from the 1933 and 1942 trusts as well as the value of their respective marital support rights in these three trusts in order to determine whether the value of the former exceeded the value of the latter as to each trust. The amount of excess, if any, with respect to each trust represents the consideration paid for the release of marital property rights and constitutes a gift by petitioner. Furthermore we found as a fact that the remainder interests received by petitioner's daughter from the 1942 trusts were gifts. Thus the value of these remainder interests at the time of transfer must also be determined.

We are guided in our determination of these valuation questions by section 1005 of the Code which states that where gifts are made in property, their values at the date the gifts are made shall be considered the amount of the gifts.

There is a wide disparity in the values the respective parties assign to the transfers made in 1933 and 1942. Petitioner advances three specific challenges to the manner in which respondent computed the value of the alleged gifts at the time they were made.

Petitioner first objects to the formula by which respondent allocated the interests received by the two wives from the 1933 and 1942 transfers between their release of support rights and their release of marital property rights. Where, as in the instant case, there is no evidence in the separation agreements, trust indentures or elsewhere that the husband and wife made any segregation or allocation between the two types of marital rights, then a reasonable allocation between support rights and property rights must be made based on all the facts and circumstances. Respondent's valuation of the support rights is based on the present worth of the monthly payments each wife was entitled to receive under the trusts, but limited to the period both husband and wife were alive and she remained single. This limitation was in recognition of the fact that under a decree of divorce or legal separation a husband's duty to support ordinarily ceases on the death of either party or upon the wife's remarriage. The worth of the interest received by Mabel Post McMurtry from the 1933 trust on June 30, 1933, and the worth of the interests received by Louise Hunt McMurtry from the 1942 trusts on July 20, 1942, above and beyond the value of their respective support rights are considered by respondent to be allocable to the release by the wives of their marital property rights and therefore to constitute the amount of the gifts.

Petitioner first claims that all the interests received by the two spouses from the 1933 and 1942 trusts were in consideration solely of their release of support rights. But the only basis in the record for this view is petitioner's self-serving statement as to the interests transferred to Mabel Post McMurtry in 1933 that "it was all for her support." In the absence of corroborating evidence and in the face of the dual purpose of the transfers in trust mentioned specifically in the separation agreements we are unwilling to accept petitioner's view.

Petitioner then objects to the support rights limitations employed by respondent on the ground that respondent failed to consider the amount of petitioner's annual income, the extent of his assets, and other allied circumstances. Yet in his own computation of the value of the support rights petitioner offers no different approach but also computes the present worth of the annuities of each wife for the period of the combined lives of husband and wife limited by her remarriage. This formula is not inconsistent with the living expenses of $2,500 per month paid Mabel Post McMurtry and approximately $800 per month paid Louise Hunt McMurtry during the period between actual separation from petitioner and the execution of a separation agreement. In

view of the above facts we accept the formula adopted by respondent to determine the value of the support rights of the wives as reasonable.

The second objection raised by petitioner to respondent's computation of the amounts of the alleged gifts concerns the value of Mabel Post McMurtry's interest in the Mabel Post McMurtry Trust on June 30, 1933. Respondent's actuarial expert testified the value of this interest was $353,884.80. Petitioner seeks to hold respondent to the value set out in the notice of deficiency of $344,658.15, but he introduced no evidence on this point whatsoever. Respondent is not precluded by the valuation made in his notice of deficiency from asserting a different valuation at the hearing, and in the absence of contrary evidence we hold the value of Mabel Post McMurtry's interest to be $353,884.80.

Petitioner's final and most sweeping objection to the valuation of the alleged gifts made by respondent is in regard to the actuarial aids employed by the latter. He states respondent used for his actuarial computation of the interests and support rights involved an arbitrary and outmoded mortality table, the Actuaries' or Combined Experience Table of Mortality, and an excessive rate of interest, 4 per cent. Petitioner vigorously contends that the 1937 Standard Annuity Table and 2½ per cent rate of interest should be used to compute the true fair market value of the annuities and support rights. In reply to respondent's contention that Gift Tax Regulations 108, section 86.19 (f) (4)[2] governs the valuation of the wives' interests and support rights and prescribes the use of the Actuaries' or Combined Experience Table of Mortality and an interest rate of 4 per cent, petitioner asserts first that the regulations do not prescribe a method of computation for the valuations here involved, and secondly, if they do require the table and interest rate used by respondent, then they are invalid as arbitrary and unreasonable.

We are in accord with petitioner that Regulations 108, section 86.19 (f) (4) does not cover valuation of annuities where a remarriage factor is involved as was true in the case of the support rights of both wives and the interests of petitioner's second wife in Louise Hunt

---

[2] REGULATIONS 108.

SEC. 86.19 VALUATION OF PROPERTY.—* * *

(f) Annuities, life estates, remainders and reversions.— * * *

* * * * * *

(4) Actuarial calculations by Bureau.—If in the case of a completed gift an annuity is to be paid during the life of an individual and in any event for a definite number of years, or for more than one life, or in any other manner rendering inapplicable both Table A and Table B, the case may be stated to the Commissioner, who will thereupon furnish the applicable factor. In making such calculations when life interests or remainders upon life interests are involved, use will be made of the Actuaries' or Combined Experience Table of Mortality, as extended (that being the basis of Table A), with interest at 4 per cent per annum compounded annually.

McMurtry Trusts No. 1 and No. 2. Respondent's actuarial expert admitted that no regulation had been issued covering valuation of annuities where a remarriage factor played a part, and he could only do the best possible under the circumstances. However, in determining the value of petitioner's first wife's interest in the Mabel Post McMurtry Trust on June 30, 1933, and the value of her interest in Louise Hunt McMurtry Trust No. 2 on July 20, 1942, we hold the cited subsection of the Regulations applies, for she had a "life interest" in an annuity unrestricted by the possibility of remarriage in each instance. Petitioner's argument that section 86.19 (f) (4) does not apply in these two situations is based on the fact Mabel Post McMurtry had an annuity for life and not a life estate in the trust but the words of the section calling for use of the Actuaries' or Combined Experience Table of Mortality and 4 per cent interest mention only a "life interest" which is just what she possessed.

Regardless of the fact that some of the valuations come within the scope of respondent's regulations and others fall outside, the question for determination remains the same, whether the gift valuations made by respondent using the Combined Experience Table of Mortality and 4 per cent rate of interest were unreasonable.

Petitioner's actuarial experts testified at length that the Actuaries' or Combined Experience Table of Mortality was so outmoded and 4 per cent rate of interest was so excessive that no insurance company writing annuities used them any more for valuation purposes. They testified that a commercial annuity's price in 1942 would be based on the 1937 Standard Annuity Table and an interest rate of 2½ per cent. Furthermore petitioner cites *Anna L. Raymond*, 40 B. T. A. 224, affd., 114 Fed. (2d) 140, certiorari denied, 311 U. S. 710, where we rejected the use of respondent's mortality table in the valuation of annuities.

Yet, despite these assertions, petitioner has not convinced us the use of the Actuaries' or Combined Experience Table of Mortality and the 4 per cent rate of interest was arbitrary and unreasonable. The fact that private insurance companies no longer use them is not conclusive, for as we said in *Estate of Charles H. Hart*, 1 T. C. 989, 991, and *Estate of Koert Bartman*, 10 T. C. 1073, 1079, estate and gift tax regulations have always distinguished between annuities issued by insurance companies which are conservatively calculated for their own financial advantage and other annuities, and such distinction is justifiable. Nor is the case of *Anna L. Raymond, supra*, of much aid to petitioner, for as we pointed out in *Estelle May Affelder*, 7 T. C. 1190, 1194, the question in that case was unique in that the annuities had to be purchased from an insurance company so that the amounts of the annuities nec-

essarily had to be computed by the use of mortality tables employed by insurance firms. In the instant case there is no such necessity for adhering to the practices of insurance companies. Furthermore, the *Raymond* case involved income taxes, not the gift tax.

The Combined Experience Table of Mortality and 4 per cent interest rate have been employed for many years in the computation of the value of annuities and it is interesting to note their widespread use today by states for estate and inheritance tax purposes. Currently some 15 states use this table with 4, 5, and 6 per cent interest. No state has as yet adopted the 1937 Standard Annuity Table or 2½ per cent interest rate for these purposes. See Prentice-Hall, Inheritance and Transfer Tax Service, 11th Edition, vol. 1, pages 801–803.

We note that in *Estate of Charles H. Hart, supra,* and even more recently in *Estate of Koert Bartman, supra,* contentions similar to petitioner's were made, and yet we held that for the purpose of valuing annuities the respondent's table of mortality and interest rate were not arbitrary. Approval of the valuation we made in *Estate of Abraham Koshland,* 11 T. C. 904, by means of the Combined Experience Table of Mortality has been expressed by the Court of Appeals for the Ninth Circuit in *Koshland* v. *Commissioner,* 177 Fed. (2d) 851. In the case of *Huntington National Bank of Columbus, Ohio,* 13 T..C. 760, we used this table and only failed to use 4 per cent interest rate because it was shown the effective yield on the investments in taxpayer's estate was in fact less than 4 per cent, a circumstance which has not been shown to exist here.

Finally petitioner himself employed the Combined Experience Table of Mortality and 4 per cent rate of interest to compute the support rights of Mabel Post McMurtry in the 1933 trust. We think that the use of this table and interest rate was reasonable in 1933 to compute not only the value of her support rights but also the value of her interest in this trust. We also believe that conditions have not so changed since 1933 as to render the use of such table and interest rate inappropriate in computing the value of the interests received by Louise Hunt McMurtry from the 1942 trusts and the value of her support rights therein.

Therefore using respondent's valuations computed by means of the Combined Experience Table of Mortality and 4 per cent interest rate, we found that the value of Mabel Post McMurtry's interest in the 1933 trust amounted to $353,884.80 at the time of transfer, and that the value of her support rights in the trust at that time was $238,530.30. Thus we found as a fact and now hold that the excess in the value of her interest over the value of her support rights, amounting to $115,354.50, was a gift. Similarly we found that Louise Hunt Mc-

Murtry's interest in the Louise Hunt McMurtry Trust No. 1 had a value of $79,556.63 at the time of transfer, while her support rights therein were worth only $38,429.34. Thus we found as a fact and hold that she thereby received a gift of $41,127.29. Turning then to Louise Hunt McMurtry Trust No. 2 we found the value of petitioner's second wife's interest therein was $35,680.17 and the value of her support rights in the trust amounted to but $9,166.26. Therefore we found as a fact and hold that by this transfer she received a gift of $26,513.91. From the 1942 trusts, No. 1 and No. 2, we found as a fact and hold that petitioner's daughter received gifts of $71,080.87 and $92,523.20, respectively.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, LEECH and JOHNSON, *JJ.*, dissent.