JOHN C. W. DIX AND CAROLINE W. DIX, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

GEORGE E. DIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 584–65, 2942–65. Filed September 29, 1966.

*Richard A. Bishop* and *Charles S. Yates*, for the petitioners.
*Douglas O. Tice, Jr.*, for the respondent.

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar year 1960 in these consolidated proceedings in the amounts of $4,577.49 and $6,487.62, respectively. Petitioners contend that instead of deficiencies they are entitled to refunds of $474.45 and $796.82, respectively.

Petitioners have assigned two errors, as follows:

(a) In determining the taxable income of the Petitioners for the year 1960 the Commissioner erroneously determined that the basis of stock owned one-third by John C. W. Dix [George E. Dix], which was sold for $121,095.00, was $84,514.39.

(b) The Commissioner has erroneously disallowed a deduction for interest paid by John C. W. Dix [George E. Dix] under a private annuity contract.

### FINDINGS OF FACT

Most of the facts were stipulated and are incorporated herein by reference.

John C. W. Dix, hereinafter referred to as John, and Caroline W. Dix, his wife, filed a joint Federal income tax return for the taxable year 1960 with the district director of internal revenue at Richmond, Va.

George E. Dix, hereinafter referred to as George, filed a Federal income tax return for the taxable year 1960 with the district director for the district of Manhattan, at New York, N.Y.

John and George are brothers. On June 20, 1960, the brothers, along with their sister Elizabeth D. Keyes, hereinafter referred to as Elizabeth, entered into a written agreement by which they received corporate securities having a fair market value of $162,689.75, from their mother Janet D. Dix. The material provisions of this agreement are as follows:

THIS AGREEMENT made this 20th day of June, 1960 by and between JANET D. DIX of Gordonsville, Virginia, hereinafter called "Transferor" and JOHN C. W. DIX, of Gordonsville, Virginia, GEORGE E. DIX, JR. of New York, New York, and ELIZABETH D. KEYES, of Denton, Texas, hereinafter called "Transferees".

WHEREAS, the transferor is the owner of certain securities, a list whereof is attached hereto and made a part of this Agreement as Schedule "A" [which securities had a total fair market value as of June 20, 1960, of $162,689.75] ; and

WHEREAS, the transferor, because of the uncertainty of payments of interest and dividends of the securities aforesaid, is desirous of relieving herself from the burden of collecting such income and of the management of the investments; and

WHEREAS, the transferor is willing to bargain, sell, and transfer to the transferees all the securities so listed in Schedule "A", provided however that transferees, and each of them, will agree to pay the transferor a sum certain annually, as hereinafter set forth, regardless of the value of the securities so transferred and regardless of the income therefrom received by transferees; and

WHEREAS, the transferor is willing to transfer the said securities, and transferees are ready, willing and able to pay over to transferor a sum certain annually during the lifetime of the latter.

Now THEREFORE, for and in consideration of the mutual covenants of the parties hereto, the transferor hereby bargains, sells and transfers absolutely to the transferees and each of them all of the securities set forth in Schedule "A", which is attached hereto and made a part hereof.

The transferees, and each of them, in consideration of the sale, transfer and delivery of such securities, receipt of which is hereby acknowledged, hereby covenant and agree, or cause to be paid to the transferor, or for her benefit, for and during the full term of her life, the sum of Twenty-Two Thousand Four Hundred Fifty-Two and 00/100 Dollars ($22,452.00) annually, payable in equal, semi-annual installments, or more frequently, of Eleven Thousand Two Hundred Twenty-Six and 00/100 Dollars ($11,226.00), the first installment payment to be due on the 20th day of December, 1960.

Immediately following the transaction of June 20, 1960, and before any payments specified by the agreement had been made to Janet D. Dix, John, George, and Elizabeth sold a portion (74.433 percent) of the securities received from their mother at their then fair market value of $121,095.

Later, during the calendar year 1960, John and George each made payments of $4,000 to Janet D. Dix, pursuant to the terms of the private annuity contract dated June 20, 1960.

At the time of the transaction of June 20, 1960, Janet D. Dix was 79 years of age. Her medical records reveal that, at the time, she was of average good health considering her age.

A representative purchase price charged by a commercial life insurance company for a life annuity for a female, age 79, with an annual payment of $22,452, is $167,559.28.

Neither John nor George reported any income from the sale of the portion of the above-mentioned securities in his respective 1960 Federal income tax return. John attached a rider to the joint return filed by him and his wife stating that:

On June 20, 1960 John C. W. Dix and two other parties entered into a private annuity transaction with Mrs. Janet D. Dix. The agreement provides that payments of $22,452.00 per annum will be made to Mrs. Dix for the remainder of her life.

As consideration for this, Mrs. Dix transferred certain securities with a market value of $162,689.75 which were subsequently sold by the recipients. Inasmuch as the expected payments under the annuity agreement exceed the

sales price of the stock, no gain or loss will be realized in 1960. Determination of the gain or loss will be withheld until the annuitant dies or until payments under the contract exceed the sales price of the securities.

The respondent determined that John and George each realized a gain from the sale of the above-mentioned securities of $12,193.54, which gain they had failed to report on their returns. In a statement attached to the deficiency notice sent to John and his wife, the respondent explained the adjustment thus:

(a) It is held that the gain realized from the sale of securities received in consideration of annuity payments to be made to Mrs. Janet Dix for the term of her life is includible in your taxable income. Your share of the gain has been computed as follows:

| | |
|---|---|
| Selling price | $121,095.00 |
| *Basis of securities sold | 84,514.39 |
| Gain realized | 36,580.61 |
| Your share (⅓ of $36,580.61) | 12,193.54 |
| *Basis of all securities acquired | 113,544.25 |
| Portion sold—74.433% | |
| Basis of securities sold | 84,514.39 |

In a statement attached to the deficiency notice sent to George, the respondent explained the adjustment thus:

2b) Gain from sale of property ............................................ $12,193.54

Taxpayers mother transferred securities to her children in agreement with them to pay her an annuity of $22,452.00 per year for life. The securities transferred to the children had an fair market value of $162,689.75.

Upon receipt of the securities the children sold part of them for $121,095.00 & retained the balance thereof which had a fair market value of $41,594.75.

The following computation is made in accordance with the provisions of Revenue Ruling 55–119 to show capital gain realized.

Annuity payments made to date of disposition of the securities .... 0

Value of prospective payments:

Annual annuity per contract. Present worth of an annuity at age 79 per table I. Regulations 20–2031–7. 5.0572 .... 113,544.25

113,544.25

Amount of property .................... $121,095.00

Value of property received ................. $\frac{121,095.00}{162,689.75}$ = 74.4333%

Total value of property received ................................. 162,689.75

Basis of property from above .................................... 113,544.25

Gain based on entire sale ....................................... 49,145.50

Percentage sold ............................................... 74.4333%

Taxable gain .................................................. $36,580.61

Taxable gain applicable to taxpayer George E. Dix, ⅓ of $36,580.61= ....................................... 12,193.54

Above transaction is being treated as a short-term capital gain.

No part of the securities of the value of $162,689.75 transferred by Janet D. Dix on June 20, 1960, to her three children represented a gift from the mother to her children.

As shown in the statement attached to the deficiency notice sent to George, the respondent, in determining that each of the children realized a gain of $12,193.54 on the sale of 74.433 percent of the securities received from their mother pursuant to the agreement of June 20, 1960, applied the principles enunciated in Rev. Rul. 55–119, 1955–1 C.B. 352. We believe those principles are applicable here.

Both parties agree that there was no gift involved in the transfer of the securities from the mother to her children and we have so found.

It is also a fact that immediately following the transaction of June 20, 1960, and *before* any payments specified by the agreement had been made to the mother, the children sold 74.433 percent of the securities received from their mother for a price of $121,095 which was 74.433 percent of the fair market value of the securities received. A sale is a taxable transaction in the year of sale. Sec. 61(a)(3), I.R.C. 1954. In order to determine whether a gain or loss results from a sale of property under section 1001, I.R.C. 1954, it is necessary to determine the "basis" of the property sold. This basis is "cost." Sec. 1012, I.R.C. 1954.

Our problem then is to determine the cost of the securities that were sold. Of course, this cost would be what the children eventually paid their mother for the securities. This cannot be determined definitely until the mother deceases. Therefore, it is necessary to determine tentatively what the cost to the children will be of paying their mother $22,452 annually, in semiannual installments, for the remaining years of her life. This is achieved by the application of a table such as was used in Rev. Rul. 55–119, *supra*.[1] This table, as amended, is the table now being used in the current gift tax and estate tax regulations. It shows the present worth of an annuity of $1 at age 79 to be $5.0572. Therefore, the present worth on June 20, 1960, of an annuity of $22,452 at age 79 would be 22,452×$5.0572, or $113,-544.25 and, since the payments were to be made semiannually, the $113,544.25 should be multiplied by the factor of 1.0087[2] provided

---

[1] At this point it should be noted that the table used in Rev. Rul. 55–119 was "Table I, section 86.19(f) of Regulations 108" relating to the gift tax, which table is identical with table A used in sec. 81.10(i) of Regs. 105 relating to the estate tax. Both Regs. 108 and 105 were amended in 1952, wherein new *identical* tables at a lower rate of interest (3½ percent instead of 4 percent) were adopted, which new tables are now currently used in the current Gift Tax Regs., sec. 25.2512–5 (a), (b), and (f), and the current Estate Tax Regs., sec. 20.2031–7 (a), (b), and (f). For the above amendments, see T.D. 5902, 1952–1 C.B. 167, 171, as to gift tax, and T.D. 5906, 1952–1 C.B. 155, 157, as to estate tax.

[2] $113,544.25 times 1.0087 equals $114,532.08 times 74.433 equals $85,249.67, the basis of the securities that were sold.

for in section 20.2031–7(b)(2) of Estate Tax Regulations, and section 25.2512–5(b)(2) of Gift Tax Regulations. This is what the respondent did in his determinations of the instant deficiencies, except that he apparently overlooked the fact that the payments were being made semiannually. This will require a small adjustment and is one that can be made in a recomputation under Rule 50.

We know of no reasonable objection that could be made to the application of the principles of Rev. Rul. 55–119, set out in the margin,[3] to the facts of this case. Cf. *Kaufman's, Inc.*, 28 T.C. 1179, 1186. The basis used for determining gain or loss is probably the best available until the death of the annuitant occurs when the true basis will first become known. Of course, if the annuitant should live beyond her expectancy and the payments made by the children reach a total amount in excess of $114,532.08, such excess would be a loss in the year or years in which paid. *Donald H. Sheridan*, 18 T.C. 381.

We do not understand petitioners to object seriously to the principles enunciated in Rev. Rul. 55–119. Their objection goes to the table that was used. Petitioners, however, have not proven that a better table should be used and in this respect petitioners have not overcome the presumption of correctness of the respondent's determinations. In their petitions they allege:

The basis for determining gain or loss on sale of the securities is the current value of anticipated payments to be made under the contract. The current value of the payment was $167,559.28, and the basis allocable to those securities sold was $124,719.40.

The $167,559.28 contended for by petitioners was stipulated by the parties as the "representative purchase price charged by a commercial life insurance company for a life annuity for a female, age 79, with an

---

[3] In view of the foregoing and assuming an arm's-length transaction with no intent of a gift on the part of either party, where a taxpayer who is not engaged in the business of writing annuities receives property in exchange for his contract to make annuity payments, the following Federal income tax consequences will result * * *

\*     \*     \*     \*     \*     \*     \*

3. Should disposition of the property occur prior to the death of the annuitant, the basis (unadjusted) for determining gain shall be the total of the annuity payments made under the contract up to the date of disposition plus the value of the prospective payments remaining to be paid at the date of such disposition (computed in accordance with Table I, section 86.19(f) of Regulations 108 [sec. 25.2512–5, Gift Tax Regs.] with reference to the life expectancy of the annuitant as of the date of disposition of the property). * * *

Where disposition of property acquired in exchange for a promise to make annuity payments has occurred prior to the death of the annuitant, the taxpayer may realize a gain or loss, for Federal income tax purposes, as a result of events occurring subsequent to such disposition. * * * If the total of the annuity payments made under the contract (total of payments made before and after disposition of the property) exceeds the basis (unadjusted) of the property used in determining the gain or loss on the disposition, such excess is a loss in the year or years in which paid. * * *

On the other hand, in the case of a recognized gain upon disposition of the property prior to the death of the annuitant, if the total of the annuity payments ultimately made is less than the basis (unadjusted) for computing such gain, the excess of such basis over the total of the annuity payments will constitute income in the year the annuitant dies. * * *

annual payment of $22,452." Petitioners, however, have offered no evidence in support of their position that the price charged by a commercial life insurance company for a life annuity should determine the current value of the instant annuity. In fact, the only evidence on the subject is to the contrary and consisted of the testimony of respondent's witness, Norman Greenberg, an actuary of considerable experience and familiarity with the methods used in determining charges made for life annuities by commercial life insurance companies.

Greenberg's testimony revealed that insurance companies have large assets, that they are subject to State regulation on investments and on the maintenance of reserves, and that insurance company annuity prices contain a loading factor for anticipated expenses and expected profits. In addition, the insurance companies set prices based on mortality tables reflecting their experience with annuitants as a class. This experience demonstrates that persons who purchase life annuities from insurance companies are a self-selected group who live longer than the general population. The fact that an insurance company refers to mortality tables reflecting longer lives over which payments must be made would, of course, be reflected in higher prices charged for life annuities.

We believe that these demonstrated factors considered by insurance companies in selling life annuities make most inappropriate a comparison of such an annuity with the one in the instant case to be paid by three individuals. These individuals are not in the business of selling annuities. There is not the same assurance that they can satisfy their contract as there would be for an insurance company and there is no evidence that the longer life expectancy of persons who purchase commercial annuities is applicable to petitioners' mother.

Furthermore, the respondent's regulations, cited above, recognize the distinction in value between private annuities and annuities of commercial life insurance companies. As indicated therein, tables 1 of sections 20.2031–7(a) and 25.2512–5(a) of the regulations give a table for values for *private* annuities, whereas sections 20.2031–8(a) and 25.2512–6(a) of the regulations provide that the value of annuity contracts of companies regularly engaged in selling such contracts is established through sale of the particular contract or through sale by the company of comparable contracts.

Petitioners are not the first to take issue with the tables prescribed by respondent's regulations for valuing private annuities. The litigated cases overwhelmingly recognize the valid distinction between the valuation of private annuities and annuities issued by commercial life insurance companies and have upheld the validity of the respondent's regulations for valuing private annuities. See *Estate of Charles H. Hart*, 1 T.C. 989; *Estelle May Affelder*, 7 T.C. 1190; *Estate of Koert Bartman*, 10 T.C. 1073; *Estate of Abraham Koshland*, 11

T.C. 904, affd. 177 F. 2d 851 (C.A. 9, 1949) ; and *Bowden* v. *Commissioner*, 234 F. 2d 937 (C.A. 5, 1956), affirming a Memorandum Opinion of this Court.   In the *Koshland* case, the Ninth Circuit, among other things, said:

The burden of proving the unsoundness of the table long in use by the bureau was necessarily on the taxpayer.   The Tax Court observed that the table advocated by the latter's actuarial expert might be worthy of more consideration if the question at issue were the cost of an annuity from a commercial insurance company; * * *

Another approach taken by petitioners was to take the expected return multiple of 10.1 years shown for a female, age 79, in table 1 of section 1.72–9 of the current income tax regulations, and then turn to fig. 27 on page 29.69 of Accountants' Handbook (4th ed.), which gives the "Present Value of Annuity of $1 at End of Each Period" at different rates of interest, and multiply $22,452 at the end of a 10-year period by the factors given for assumed interest at 3, 4, 5, and 6 percent, with the following alleged results:

| Assumed interest (percent) | Factor at end of 10-year period | Annuity | Present value of annuity |
|---|---|---|---|
| 3 | 8. 53020284 | $22, 452 | $191, 520. 11 |
| 4 | 8. 11089578 | 22, 452 | 182, 105. 83 |
| 5 | 7. 72173493 | 22, 452 | 173, 368. 39 |
| 6 | 7. 36008705 | 22, 452 | 165, 248. 67 |

From these calculations petitioners argue in their brief thus:

These calculations show that if we discount the payments which respondent tells Janet D. Dix she can expect to live to receive at a rate as high as six percent per annum, we still have a present value of these payments equal to $165,248.67.   Petitioners have claimed a value of only $162,689.75 in determining their basis for the stock received in the exchange.

We see no merit in this approach.   Greenberg testified that the life expectancies shown in table 1 of section 1.72–9 of the current income tax regulations are based, not on general population experience, but on the 1937 Standard Annuity Table which reflects the experience of life insurance companies with the longer lived group of life annuitants.   Section 72, I.R.C. 1954, pertains to the income tax treatment of amounts *received* as annuities, which is a different issue from the one we have before us.   The issue before us in no way concerns the income tax treatment under section 72, I.R.C. 1954, to the *recipient* of the annuity in question.   The issue here concerns the value of an annuity to be paid by three individuals under a private annuity contract.

On this issue we hold that the basis of the securities sold was $85,249.67.   See fn. 2.

On the second issue, we do not think petitioners have sustained their burden of showing that "The Commissioner has erroneously

disallowed a deduction for interest paid * * * under a private annuity contract." In the first place, the respondent did not "disallow a deduction" for the petitioners did not claim any "deduction for interest paid * * * under a private annuity contract" on their returns. In the petition filed in docket No. 584–65 (the allegation is substantially the same in the petition filed in docket No. 2942–65) petitioners alleged:

5. The facts upon which the Petitioners rely as the basis of this case are as follows:

\* \* \* \* \* \* \*

(b) The difference between the current value of the payments under the contract and the total anticipated payments represents interest and is deductible as paid by the payors.

The above allegation was denied in the respondent's answers. By a "Motion for Leave to Amend the Stipulation of Facts," filed and granted after the hearing in this case, the parties stipulated the following additional fact:

1. That during the calendar year 1960 John C. W. Dix and George E. Dix made payments of $4,000 each to Janet D. Dix, pursuant to the terms of the private annuity contract dated June 20, 1960.

In their brief, John and George each apparently claims a deduction for interest of $1,084.60, computed as follows:

Assuming a four percent interest factor, the deduction for interest in 1960 when the first semiannual annuity payment was made would be computed as follows:

| | |
|---|---:|
| Principal | $162,689.75 |
| 162,689.75×2%= | 3,253.80 |
| ⅓ share for each | 1,084.60 |

Thus it is apparent that John and George are each claiming that $1,084.60 of the $4,000 paid their mother in 1960 was interest.

Not only have petitioners failed to prove that they are entitled to any interest deductions but the great weight of authority is that a person who agrees to pay an annuity for property transferred to him is, in effect, purchasing that property and the amount paid as an annuity is the purchase price of the property, a capital expenditure, and no part of the payments is deductible as interest paid on indebtedness. *Edwin M. Klein*, 31 B.T.A. 910, 918, affd. 84 F. 2d 310 (C.A. 7, 1936) ; *Reliable Incubator & Brooder Co.*, 6 T.C. 919, 925 (issue I) ; *Kaufman's, Inc., supra;* and *Steinbach Kresge Co.* v. *Sturgess*, 33 F. Supp. 897 (D. N.J. 1940). In the latter case the court said:

There remains the question of whether portions of plaintiff's annuity payments are deductible as interest on indebtedness.[9] According to the great weight of authority they are not,[10] and the cases appear to be correct in principle. * * * [Footnotes omitted.]

On the second issue, we hold that petitioners are not entitled to an interest deduction.

Since petitioners have failed to demonstrate that the respondent erred, we affirm his determinations, with the exception noted hereinabove, that effect be given to the fact that the annuity is payable semiannually.

*Decisions will be entered under Rule 50.*