REBECCA BELL, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4789–79.     Filed February 18, 1981.

*Mark C. Blackwell, Lynn C. Hoover, Thomas E. King, Gregory M. Kratofil,* and *Tommy W. Taylor,* for the petitioner.
*Dale P. Kensinger,* for the respondent.

WILES, *Judge:* Respondent determined a $2,520 deficiency in petitioner's 1974 income tax. The sole issue for decision is whether petitioner, the obligor under a private annuity agreement, is entitled to an interest expense deduction for 1974 under section 163[1] for any portion of the annual payment made pursuant to the private annuity agreement.

## FINDINGS OF FACT

All the facts have been stipulated and are found accordingly.

---

[1]All statutory references are to the Internal Revenue Code of 1954 as amended.

Petitioner Rebecca Bell resided in Jekyll Island Marina, Ga., when she filed her 1974 income tax return and when she filed her petition in this case.

Prior to December 4, 1972, petitioner's father, Charles R. Bell (hereinafter Mr. Bell), was the sole owner of 2,820 shares of the common stock of the Nodaway Valley Bank, Maryville, Mo. (hereinafter Nodaway), which represented 23.5 percent of Nodaway's outstanding common stock. Other members of Mr. Bell's family, including his wife, Lela Hackney Bell (hereinafter Mrs. Bell), petitioner, and petitioner's sister, owned 1,260 shares of Nodaway. Together, Mr. Bell and his family owned 34 percent of Nodaway's outstanding stock.

Sometime prior to December 4, 1972, petitioner entered into negotiations with Mr. Bell for the purchase of 1,400 shares of his Nodaway stock. Pursuant to these negotiations, certain projections were developed which reflected both the financial and tax aspects of purchasing the stock by means of a private annuity arrangement which would pay Mr. Bell and Mrs. Bell $15,000 per year so long as either of them lived. On the basis of an age of 60 for Mr. Bell and an age of 62 for Mrs. Bell, the projections determined, pursuant to Table LT6, Actuarial Values II, IRS Publication 723A (1970) (hereinafter Table LT6), that the present value of the annuity would be $174,270. Furthermore, the application of Rev. Rul. 69–74, 1969–1 C.B. 43, to the proposed transaction indicated that Mr. Bell and Mrs. Bell would be required to treat $7,915.45 of each annual payment as ordinary annuity income under section 72.

On December 4, 1972, petitioner and Mr. Bell entered into an agreement (hereinafter the agreement) whereby Mr. Bell sold to petitioner 1,400 shares of Nodaway stock, with an agreed fair market value of $173,600, in exchange for petitioner's promise to pay Mr. Bell and Mrs. Bell $15,000 per year for the remainder of their joint lives and the life of the survivor of them. The material provisions of the agreement provided as follows:

This is an Agreement entered into this 4th day of December, 1972, by and between REBECCA BELL, an individual, residing in New York, New York, (hereinafter referred to as "Transferee"), and CHARLES R. BELL, an individual, residing in Maryville, Missouri, (hereinafter referred to as "Transferor").

## WITNESSETH:

WHEREAS, Transferor is the owner of One Thousand Four Hundred (1,400) shares of stock in NODAWAY VALLEY BANK; and

WHEREAS, Transferor desires to assure a fixed annual income for the remainder of his life and the remainder of the life of Transferor's wife, LELA HACKNEY BELL, regardless of whether or not the said stock earns any dividends; and

WHEREAS, Transferee desires to own said stock and is willing to make fixed annual payments to Transferor and his wife in exchange therefor, for the remainder of Transferor's life and the remainder of the life of Transferor's wife, LELA HACKNEY BELL; and

WHEREAS, Transferor and Transferee have mutually agreed that the One Thousand Four Hundred (1,400) shares of stock presently owned by Transferor have a fair market value of One Hundred Twenty-Four Dollars ($124.00) per share;

Now THEREFORE, in consideration of the mutual covenants contained herein, the parties agree as follows:

(1) Transferor hereby sells, transfers, and assigns absolutely to Transferee One Thousand Four Hundred (1,400) shares of common stock in NODAWAY VALLEY BANK.

(2) In consideration of Transferor's sale, transfer and absolute assignment of said One Thousand Four Hundred (1,400) shares of stock as provided in paragraph (1) above, Transferee hereby agrees to pay to Transferor and Transferor's said wife an annuity of Fifteen Thousand Dollars ($15,000.00) per annum during their joint lives and the life of the survivor of them. The first such annual payment shall be due on the first anniversary of this Agreement, beginning in the year 1973, and subsequent annual payments shall be made in each year on the anniversary date of this Agreement.

(3) Parties hereby expressly agree that Transferee's obligation under the preceding paragraph shall terminate upon the death of the survivor of Transferor and Transferor's said wife, and no heir, legatee, creditor or beneficiary of either the estate of Transferor or Transferor's said wife, nor the estate of either, shall have any rights whatsoever under this Agreement; provided, however, that if the survivor of Transferor and Transferor's said wife shall die prior to the receipt of any amount owed to the survivor of Transferor and Transferor's said wife under this Agreement for any year, then the amount otherwise payable to Transferor or Transferor's said wife for that year shall be paid to such beneficiary as is designated by the survivor of Transferor and Transferor's said wife, in writing. In the absence of such designation, such payment shall be made to the estate of the survivor of Transferor and Transferor's said wife.

(4) Transferee shall be absolutely liable for payments due under paragraph (2) of this Agreement and such payments are in no way contingent upon Transferee's future earnings on NODAWAY VALLEY BANK stock.

(5) It is expressly understood that Transferor retains no security interest, mortgage, lien or pledge with respect to the shares of stock transferred under this Agreement.

(6) Transferor hereby warrants that he has good title to the stock

transferred hereunder, and that said stock is free and clear of all liens, pledges and incumbrances of any kind whatsoever.

On the date of the agreement, Mr. Bell was 60 years of age and Mrs. Bell was 62 years of age. They had a joint life expectancy of 24.6 years, and based upon such life expectancy, the expected return from the annuity was $369,000. The present value of the annuity received by Mr. Bell was $174,270.

The agreement represents the entire understanding between petitioner and Mr. Bell regarding the transaction therein undertaken. Petitioner has not executed any note to Mr. Bell in connection with the agreement, and Mr. Bell has not loaned petitioner any money to make the payments required under the agreement. At the time petitioner and Mr. Bell executed the agreement, petitioner intended to claim an interest expense deduction for a portion of each payment made thereunder. Petitioner is not in the business of writing annuity contracts for profit and is not an obligor under any other annuity agreement.

From 1973 through 1976, petitioner received dividends on the Nodaway stock transferred to her by Mr. Bell in excess of the payments she was required to make under the agreement. Aside from the Nodaway stock and the dividends she receives on the Nodaway stock, petitioner does not have sufficient financial assets or annual income to make the payments required under the agreement.

In addition to the agreement with petitioner, Mr. Bell also entered into an agreement with petitioner's sister whereby he transferred 1,400 shares of Nodaway common stock to her in exchange for her promise to pay him and his wife $15,000 per year during their joint lives. Mr. Bell agreed to sell the 2,800 shares of Nodaway common stock to petitioner and her sister in exchange for annuities for two reasons. First, the annual payments of $30,000 which Mr. Bell would receive from petitioner and her sister were sufficient in combination with his other income to satisfy his own and his wife's anticipated living expenses. Second, Mr. Bell wanted petitioner to own the Nodaway stock, but petitioner was unable to purchase the stock with a lump-sum payment.

During 1974, petitioner paid Mr. Bell $15,000 pursuant to the agreement. On her 1974 income tax return, petitioner claimed an interest expense deduction of $7,915.45, computed on the basis of the amount of the payment that would be treated as ordinary

income to Mr. Bell. In the notice of deficiency, respondent disallowed the claimed interest expense deduction.

## OPINION

We must decide whether petitioner is entitled to an interest expense deduction for 1974 under section 163 for any portion of the annuity payment made pursuant to the agreement.

Petitioner claims that the negotiations and the subsequent agreement contemplated and accomplished the purchase of the Nodaway stock at its current fair market value in exchange for an annuity of an equal value,[2] determined by discounting the expected return from the annuity at an interest rate of 6 percent pursuant to Table LT6.[3] According to petitioner, the agreement thereby created an indebtedness equal to the fair market value of the Nodaway stock. Petitioner therefore argues that the difference between the fair market value of the Nodaway stock and the expected return from the annuity constitutes the cost of deferring the payment on such indebtedness at an interest rate of 6 percent, which is fully deductible as interest under section 163 over the expected duration[4] of the agreement. Accordingly, petitioner maintains that she is entitled to the claimed interest expense deduction for 1974 because that amount represents a ratable portion of the total interest payable under the agreement.[5]

Respondent contends that petitioner is not entitled to any interest expense deduction for the annuity payments made

---

[2]Petitioner's cryptic arguments fail to acknowledge that the agreed fair market value of the Nodaway stock was $173,600 ($124 × 1,400), and not $174,270, the present value of the annuity. Nevertheless, for the remainder of this opinion, we will assume that the agreed fair market value of the Nodaway stock equaled the present value of the annuity, $174,270.

[3]Rev. Rul. 69–74, 1969–1 C.B. 43, requires the use of the tables provided in sec. 20.2031–7, Estate Tax Regs., to determine the present value of a private annuity. The tables in sec. 20.2031–7, Estate Tax Regs., have been limited to valuations on or before Dec. 31, 1970, while sec. 20.2031–10, Estate Tax Regs., controls subsequent valuations. IRS Publication 723A, which contains Table LT6, supplements sec. 20.2031–10, Estate Tax Regs., and states that the factors provided in Table LT6 "have been computed on the basis of interest at the rate of 6 percent a year, compounded annually."

[4]Mr. and Mrs. Bell's joint life expectancy of 24.6 years.

[5]The ratable portion of the total alleged interest allocable to 1974 was $7,915.85 ((369,000 − 174,270) ÷ 24.6), while the amount of the annuity payment treated as ordinary income to Mr. Bell and claimed as interest by petitioner was $7,915.45. The difference between these figures is attributable to an error in petitioner's calculation of the amount of each annuity payment which would be treated as ordinary annuity income to Mr. Bell.

under the agreement because no part of those payments is made with respect to an indebtedness within the meaning of section 163. Respondent further argues that the payments required under the agreement constitute capital expenditures and, therefore, no part of such payments represents deductible interest under section 163.

We hold that petitioner is not entitled to the claimed interest expense deduction for 1974. This Court and other courts have held that no part of the payments made pursuant to a private annuity agreement for the purchase of property is deductible as interest under section 163. *F. A. Gillespie & Sons Co. v. Commissioner*, 154 F.2d 913, 917–918 (10th Cir. 1946), cert. denied 329 U.S. 781 (1946), affg. a Memorandum Opinion of this Court; *Dix v. Commissioner*, 46 T.C. 796, 804 (1966), affd. 392 F.2d 313 (4th Cir. 1968); *Kaufman's, Inc. v. Commissioner*, 28 T.C. 1179, 1184–1185 (1957); *Reliable Incubator & Brooder Co. v. Commissioner*, 6 T.C. 919, 926 (1946); *Klein v. Commissioner*, 31 B.T.A. 910, 917–919 (1934), affd. 84 F.2d 310 (7th Cir. 1936); *Steinbach Kresge Co. v. Sturgess*, 33 F. Supp. 897, 901 (D. N.J. 1940). The promise to pay an annuity in exchange for property does not create an indebtedness within the meaning of section 163[6] so as to allow the deduction of some portion of each annuity payment as interest. *Dix v. Commissioner*, 392 F.2d 313, 318 (4th Cir. 1968); *Reliable Incubator & Brooder Co. v. Commissioner*, *supra* at 926. Rather, each annuity payment constitutes part of the purchase price of the property, a capital expenditure, and no part thereof is deductible as interest on indebtedness under section 163. *Dix v. Commissioner*, 46 T.C. at 804, 392 F.2d at 318.

Essentially, petitioner is asserting that the present value of the annuity, as determined pursuant to respondent's actuarial tables, constitutes an indebtedness for purposes of section 163. While an actuarial value can be placed on an obligation to pay an annuity, that value is not necessarily an indebtedness within the meaning of section 163. "[A]lthough an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness.'" *Deputy v. du Pont*, 308 U.S. 488, 497 (1940). An "indebtedness" within the meaning of section 163 requires "an existing unconditional enforceable obligation to pay a principal sum." *Williams*

---

[6]Sec. 163(a) provides that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness."

*v. Commissioner,* 47 T.C. 689, 692 (1967), affd. 409 F.2d 1361 (6th Cir. 1968), cert. denied 394 U.S. 997 (1969). See also *Autenreith v. Commissioner,* 115 F.2d 856, 858 (3d Cir. 1940), affg. 41 B.T.A. 319 (1940). In addition, for Federal income tax purposes "interest on indebtedness" is generally defined as "compensation for the use or forbearance of money." *Deputy v. du Pont, supra* at 498.

Under the terms of the agreement, Mr. Bell made an absolute assignment of the Nodaway stock to petitioner in exchange for her promise to pay an annuity, foregoing the payment of any definite sum of money. The agreement did not give petitioner the use of any of Mr. Bell's funds. To the contrary, upon the execution of the agreement, she owned the stock and owed nothing under the agreement except the first payment, obligating herself to make additional payments only if Mr. Bell or Mrs. Bell survive to the date on which those payments are due. Moreover, in addition to the degree of uncertainty inherent in any private annuity transaction, petitioner's promise to pay the annuity is not secured and her ability to pay the annuity is, in fact, contingent upon sufficient dividend income from the acquired Nodaway stock. Furthermore, petitioner was not in the business of writing annuity contracts for profit, but obligated herself to pay for the annuity only to acquire the stock. It is clear that Mr. Bell did not forbear the collection of any ascertainable amount owed to him by petitioner pursuant to the sale, but accepted petitioner's tenuous annuity obligation as full payment for the stock. Under these circumstances, we are convinced that petitioner's annuity obligation is too indefinite to constitute an indebtedness within the meaning of section 163. See *Dix v. Commissioner,* 392 F.2d at 318. In the instant case, the full amount of each annuity payment represents a capital expenditure,[7] and accordingly, petitioner is not entitled to any interest expense deduction therefor.

Relying on *Moore v. Commissioner,* 15 B.T.A. 1140 (1929), affd. 42 F.2d 186 (2d Cir. 1930), petitioner insists that it is inconsistent to deny her an interest expense deduction for that portion of the annuity payment which the recipient must treat as ordinary income under section 72 and Rev. Rul. 69–74, 1969–1 C.B. 43.

---

[7]See Rev. Rul. 55–119, 1955–1 C.B. 352, regarding petitioner's basis in the acquired Nodaway stock.

Upon considering *Moore*, however, we are convinced that the reasoning therein does not require a different conclusion in the instant case. Moreover, regardless of the treatment of the annuity payments to the recipient under section 72, it is clear that the Internal Revenue Code of 1954 simply does not allow the deduction claimed by petitioner. See *Dix v. Commissioner*, 392 F.2d at 318–319.

Finally, petitioner argues that the instant case is distinguishable from prior cases dealing with the deductibility of annuity payments because there was no evidence in those cases indicating that interest was a separately negotiated factor in determining the amount of the annuity. We reject this argument. Aside from the fact that upon executing the agreement petitioner intended to deduct a portion of each payment as interest, there is also no such evidence in the instant case. Moreover, even if the record showed that the negotiations contemplated that a portion of each annuity payment would represent interest, the fact that the parties to an agreement deem certain payments interest does not establish the deductibility of those payments. In order to be deductible as interest, those payments must arise with respect to an indebtedness. Accordingly, since we have already found that the agreement created no indebtedness, petitioner's argument is without merit. See *Autenreith v. Commissioner, supra*.

To reflect the foregoing,

*Decision will be entered for the respondent.*