**Jonathan P. and Lisa A. RYE, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 151–89T.**

United States Claims Court.

March 30, 1992.

Arthur A. Weiss, Detroit, Mich., for plaintiffs.

William K. Drew, Washington, D.C., with whom was Asst. Atty. Gen., Shirley D. Peterson, for defendant.

OPINION

ROBINSON, Judge.

Plaintiffs, Jonathan P. and Lisa A. Rye,[1] have brought suit under the Tucker Act, 28 U.S.C. § 1491 (1988), seeking a refund of $487,490.77 in taxes and interest paid for the 1981 tax year.  Defendant, the United States of America, opposes plaintiffs' re-

---

**1.**  Lisa A. Rye is a party in this action solely because she filed a joint return with her husband, Jonathan P. Rye, for the 1981 tax year. Unless otherwise specified, "plaintiff" shall refer to Jonathan P. Rye and "plaintiffs" shall refer to both Jonathan and Lisa Rye.

covery, and both parties have moved for summary judgment. At issue in this proceeding is whether the amendments to § 453 of the Internal Revenue Code of 1954 [2] contained in the Installment Sales Revision Act of 1980 (1980 Revision Act) alter the rule, as established by case law, that no portion of a private annuity payment may be deducted as interest on indebtedness under § 163. For the reasons which follow, the court holds that the 1980 Revision Act amendments to § 453 do not alter that established rule. Accordingly, defendant's motion for summary judgment will be granted, and plaintiffs' cross-motion for summary judgment will be denied.

### Findings of Fact

The facts material to the court's decision have been fully stipulated to by the parties. On December 30, 1980, plaintiff and his father, John K. Rye entered into an agreement, entitled "Annuity Agreement" (Agreement), whereby plaintiff acquired 100,000 shares of stock in Lamb Technicon Corporation from John K. Rye. The Agreement states that the aggregate value of the acquired shares of stock totals $7,556,000 or $75.56 per share. In exchange for the shares of stock, plaintiff made an unsecured promise to make payments to John K. Rye (or to another person for John K. Rye's benefit in certain circumstances) in the sum of $652,295.90 annually over the life of John K. Rye and, after the death of John K. Rye, over the life of his wife, Rita C. Rye, if she survives him.[3] The Agreement, which purports to be a fully integrated agreement, contains no provision for interest. It does provide that the annuity payments are absolute obligations and are to be made without reference to the value of the property transferred.

During calendar year 1981, plaintiff paid to John K. Rye the sum of $652,295.90 pursuant to the terms of the Agreement. On their federal income tax return for that year, plaintiffs claimed an interest expense deduction of $453,360. Schedule A to plaintiffs' return listed John K. Rye as the payee of interest in that same amount. In April 1985, plaintiffs received from the Internal Revenue Service (IRS) a statutory notice of deficiency in their federal tax liability for 1981 in the amount of $312,-456.79. The deficiency was based on a disallowance of the claimed interest expense deduction in the amount of $453,360. Plaintiffs subsequently paid the IRS $487,-490.77, the amount of the deficiency plus $175,033.98 in accrued interest. On October 10, 1985, plaintiffs filed a request for a refund alleging that their claimed interest payments to John K. Rye were deductible. The IRS denied plaintiffs' claim for refund on October 31, 1988.

### Contentions of the Parties

Plaintiffs argue that the transaction between plaintiff and John K. Rye qualifies, for tax purposes, as an installment sale pursuant to the plain meaning of § 453(b)(1).[4] As such, plaintiffs claim that they are entitled to an imputed interest deduction at the rate of 6 percent of the average unpaid balance of the contract as

---

**2.** The relevant sections of the Internal Revenue Code of 1954 (the 1954 Code) are located in 26 U.S.C. (1976), and its supplements. The 1954 Act was controlling in 1981, but has since been superseded by the Internal Revenue Code of 1986 (the 1986 Code). All code citations refer to the 1954 Code. All section citations refer to 26 U.S.C. (1954), unless specifically stated otherwise.

**3.** The agreement between plaintiff and his father is a common form of private annuity, a complicated but potentially useful arrangement for family estate planning. A private annuity involves the transfer of property to a transferee (obligor), who is not in the business of writing annuities for profit, in exchange for his unsecured promise to make periodic payments of money to the transferor of the property (annuitant). Like any other annuity, a private annuity may be payable for a term of years or for the life of one or more persons. *See* Raiborn & Watkins, *Critical Analysis of Private Annuity Taxation,* 50 Taxes 11 (1972).

**4.** In 1980, Congress passed the 1980 Revision Act amending § 453, the code section dealing with installment sales. Under § 453(b) an installment sale is now defined as "a disposition of property where at least one payment is to be received after the close of the taxable year in which the disposition occurs."

set forth in §§ 483 and 163.[5] Defendant counters that § 72, not § 453, governs the tax consequences of a private annuity agreement, and that regardless of which section applies, no part of plaintiff's payment is deductible interest.[6]

## DISCUSSION

### A. *Summary Judgment.*

■ Summary Judgment is useful when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ When the parties present cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for one side or the other. Each party's motion must be separately evaluated on its own merits with care taken to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). The parties to this suit have stipulated to all material facts necessary for resolution of this case. The primary issues presented, which concern the deductibility of the

alleged interest component of plaintiff's 1981 annuity payment, call for conclusions of law, and are appropriate for resolution by summary judgment.

### B. *Analysis.*

The court recognizes, and the parties agree, that prior to the enactment of the 1980 Revision Act plaintiff's transaction would have been classified as a private annuity and taxed under the rules of § 72. With a single exception,[7] every court that has considered the issue has determined that no part of a payment made pursuant to a private annuity contract for the purchase of property is deductible as interest under § 163. *See Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 126–27 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984), and the cases cited therein.

Plaintiffs, however, argue that the passage of the 1980 Revision Act requires that the entire body of case law regarding private annuity transactions be re-evaluated in light of the amended § 453(b)(1). Plaintiffs' Brief in Support of Motion for Summary Judgment (Pl.Br.) at 8. In essence, plaintiffs maintain that the plain meaning of § 453(b)(1) encompasses the transaction at issue. When plaintiff acquired the shares of Lamb stock from John K. Rye on December 31, 1980, § 453(b)(1) provided that "[t]he term installment sale means the disposition of property where at least one payment is to be received after the close of

---

**5.** Section 483 provides generally that, with certain enumerated exceptions, interest may be imputed into contracts for the sale or exchange of property in which some or all of the payments are due more than one year after the date of such sale or exchange, and in which there is total unstated interest. Section 163(a) allows as a deduction all interest paid or accrued within the taxable year on indebtedness.

**6.** Under § 72, monies received by the annuitant under a private annuity arrangement must be reported as gross income, subject to an exclusion ratio. The exclusion ratio, as detailed in § 72(b), excludes from gross income the portion of each payment which bears the same ratio to the total payment as the total investment in the contract bears to the expected return under the contract as of the annuity starting date. Thus,

the annuitant is only taxed on the portion of the payment which, although not considered interest, is essentially its equivalent.

**7.** The case of *John C. Moore Corp. v. Commissioner*, 15 B.T.A. 1140 (1929), *aff'd*, 42 F.2d 186 (2d Cir.1930), stands alone in holding that imputed interest may be deducted under these circumstances. The case, however, is of no value as a precedent. Several decisions since *Moore*, including those of the Board of Tax Appeals (the court which decided *Moore*) and its successor, the Tax Court, have held that no part of a private annuity may be deducted as interest under § 163. *See Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 127–28 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984); *Dix v. Commissioner*, 392 F.2d 313, 317–18 (4th Cir.1968).

the taxable year in which the disposition occurs." Because a transfer of stock qualifies as a disposition of "property," and plaintiff's agreement contemplates that one or more payments will be received after the year of the stock sale, plaintiffs maintain that the transaction should qualify as an installment sale for income tax purposes. Plaintiffs conclude that, as an installment transaction under § 453, plaintiff's deferred payment obligation would have imputed interest, pursuant to § 483, that would then be deductible under § 163.

▪ The defendant acknowledges, and the court agrees, that § 453(b)(1), as amended, appears to encompass a private annuity transaction. However, as a matter of statutory construction, it is a well established principle that a general statute does not supersede a previously enacted specific statute to the extent that they overlap. In fact, "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari,* 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Section 72, as evidenced by its title, deals specifically with annuities and, as noted by defendant, is the successor to a line of similar statutes since 1913.[8] Conversely, § 453 is a general statute which covers various types of property disposition where payments are deferred.

▪ Plaintiffs argue that the legislative history of the 1980 Revision Act suggests that Congress amended the installment sales rules specifically to cover private annuities. In support of this conclusion, plaintiffs direct the court's attention to the Senate Report on H.R. 6899 (1980), the bill which Congress eventually enacted as the 1980 Revision Act.[9] H.R. 6899 states that "[t]he Committee believes that a taxpayer

should be permitted to report gain from a deferred payment sale under the installment method even if the selling price may be subject to some contingency," and adds that "a creation of a statutory deferred payment option for *all* forms of deferred payment sales significantly expands the availability of installment reporting to include situations where it has not previously been permitted." S.Rep. No. 96–1000, 96 Cong., 2nd Sess. at 23 *reprinted in* 1980–2 C.B. 494, 506. (Emphasis added.) Plaintiffs conclude that these statements show the intent of Congress that the 1980 Revision Act has broad reach and that it includes private annuity arrangements, which are contingent as to amount and time. However, that same report states in footnote 12 that "[a]nother technique for intra-family transfers involves the so-called 'private annuity' arrangement. The bill does not deal directly with this type of arrangement." *Id.* at 12 n. 12. Plaintiffs seize upon Congress' use of the word "directly" and insist that the 1980 Revision Act was written in such broad terms that, while not directly dealing with private annuities, such transactions are still within its scope. The court is not persuaded by plaintiffs' reasoning. The court cannot think of a more direct effect on this transaction than plaintiffs' interpretation of § 453. A subsequent statute which allows one section of the 1954 Code to supersede the applicability of another section of the 1954 Code on a particular type of transaction, cannot help but directly impact that type of transaction.

Plaintiffs also insist that, if the legislators had not intended that private annuities be encompassed by the 1980 Revision Act, they would have specified its exclusion in § 453(b)(2), which lists two exceptions to

---

8. Plaintiffs do not dispute that the transaction in this case is a private annuity to which section 72, by definition, could apply.

9. Citing precedential authority, which stands for the general proposition that legislative history need not be examined where the language of the statute is clear, *Barnes v. Cohen,* 749 F.2d 1009, 1013 (3d Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985), plaintiffs

initially argued that the court should not look to the legislative history of § 453(b)(1) because its language clearly encompasses the instant transaction. However, given the overlap between § 453 and § 72, the court may certainly delve into whatever legislative history is available to resolve the issue of which section governs the private annuity arrangement in this case.

the term "installment sales."[10] However, not only does § 453(b)(2) give no indication that it is an all inclusive list of exceptions to § 453, but the court is not convinced that the drafters of the 1980 Revision Act tried to contemplate every conceivable exception that might exist in other sections of the 1954 Code. Accordingly, because plaintiffs have not shown the existence of a clear intention by Congress, either through the legislative history or through § 453(b)(2), that § 453, a general statute in nature, controls or nullifies § 72, which is specific by definition, § 72 continues to govern private annuities. *See, Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). *See also, Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72 (1961).

Moreover, the court is persuaded by defendant's argument that no part of plaintiff's payment is deductible interest regardless of whether § 453 or § 72 governs plaintiff's arrangement with John K. Rye. Section 453 sets out a method for reporting *income from a sale of property* where one or more payments are received after. the close of the taxable year in which the sale occurred. Section 72 requires, except as otherwise provided, that any amount *received* under an annuity contract must be reported as gross income. Because § 453 only applies to the tax treatment of sellers of property, and § 72 only applies to the tax treatment of annuitants, whichever section does govern the arrangement in this case only pertains to John K. Rye. Neither section sets out plaintiff's tax treatment.

Plaintiffs do not deny that § 453 is a sellers provision, but argue that the tax treatment of the annuity writer is tied to the treatment of the annuitant. They maintain that after the enactment of the 1980 Revision Act, there exists two sections of the 1954 Code dealing with the same transaction, but with different consequences. Therefore, John K. Rye, as an annuitant, had an election between §§ 72 and 453. Because he filed his 1981 return using the installment method under § 453(b), and paid his tax accordingly, plaintiffs contend that § 453 controlled all of the subsequent tax consequences, including plaintiff's tax consequences.[11] One such consequence is the applicability of § 483.[12] Because John K. Rye filed under § 453, plaintiffs maintain that he was required to impute, pursuant to § 483, an interest component into the amount received and report it on his return at the higher tax rate.[13] Once § 453 has taken the transaction into § 483, plaintiffs argue that an interest component then exists for both sides of the transaction. Citing Treasury Regulation § 1.483–2(a)(1), which provides that "such unstated interest shall constitute interest for *all purposes of the Code*" (emphasis added), plaintiffs conclude that they are entitled to deduct plaintiff's imputed interest under § 163.

---

**10.** Section 453(b)(2) provides the following:

(2) **Exceptions.**—The term "installment sale" does not include—

(A) Dealer disposition of personal property—A disposition of personal property on the installment plan by a person who regularly sells or otherwise disposes of personal property on the installment plan.

(B) Inventories of personal property—A disposition of personal property of a kind which is required to be included in the inventory of the taxpayer if on hand at the close of the taxable year.

**11.** Defendant maintains that if John K. Rye reported his return under § 453, then he wrongly reported his return. The fact that the Internal Revenue Service did not contest his return defendant insists is irrelevant.

**12.** Defendant does not dispute that if § 453 is applicable to a private annuity arrangement, the provisions of § 483 also apply. Defendant's Reply Brief at 5.

**13.** Defendant initially argued that § 483(f)(5) precludes the application of § 483 to the instant transaction. Section 483(f)(5) provides that "[t]his section shall not apply to any amount the liability for which depends in whole or in part on the life expectancy of one or more individuals *and* which constitutes an amount received as an annuity to which section 72 applies." (emphasis added). Plaintiffs interpret Congress' use of the conjunction "and" to mean that § 483 is excluded only in those instances where § 72 is applicable. Because John K. Rye elected to file under § 453, plaintiffs argue that § 483(f)(5) does not preclude the imputed interest rules of § 483 from applying to the instant transaction.

In support of their contentions plaintiffs direct the court's attention to the conjunction "and" in § 483(f)(5).[14] They argue that by excluding an annuity to which § 72 applies from the applicability of the imputed interest provisions of § 483, Congress intended to tie an obligor's ability to deduct interest to the tax treatment of an annuitant. However, plaintiffs have provided no evidence to validate their argument. There has simply been no indication from Congress that it has sought to maintain symmetry between the parties to a transaction. As the 4th Circuit stated in *Dix v. Commissioner*, 392 F.2d 313, 319 (4th Cir.1968):

> It can be argued that * * * the taxpayers should be entitled to a deduction corresponding to the deduction which is allowed in the income payments under § 72(a) and that since it arises from the same contract it would be inconsistent to hold otherwise.
>
> The short answer is that the Code does not so provide. Each taxpayer is a separate entity. The Internal Revenue Code covers thousands of items. There are millions of taxpayers. What is a taxable item in one man's hands may be exempt in another's depending on age, status, and many other conditions.

*Accord Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 128 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984). Simply stated, the tax treatment of an individual taxpayer is determined only by the tax laws applicable to that taxpayer's situation.[15]

Even if § 453 takes the transaction into § 483, thus creating an interest component for both sides of the arrangement at issue, plaintiffs are still not entitled to an interest deduction under § 163. Neither § 453 nor § 483 authorizes any deduction for the purchaser in an installment sale. As noted above, § 453 sets out a method of reporting income for the seller of property. Section 483 provides that portions of deferred payments for the sale of property shall be treated as interest. However, even if § 483 characterizes the payments as interest, it does not govern their substantive tax treatment. Treasury Regulation § 1.483–2(a)(1)(ii) states that "[a]ny amount treated as interest under section 483 by the purchaser shall (*if otherwise allowable*) be deducted as interest for the taxable year in which the payment is made in the case of a cash method taxpayer * * *." (Emphasis added.) In sum, whether the portions of those payments treated as interest under § 483 are deductible depends on other provisions of the 1954 Code.

Section 163(a) allows for the deduction of "all interest paid or accrued within the taxable year *on indebtedness.*" (Emphasis added.) Plaintiffs argue that since the transfer of stock in this case qualifies as an installment sale under § 453, plaintiff's obligation to John K. Rye does constitute an indebtedness. In support of their position plaintiffs cite *Garvey*, which states that "when each annuity is contingent upon the continued existence of a measuring life or lives, the obligation is not payable in any event and hence is not an indebtedness for which interest may be deductible pursuant to § 163." *Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 127 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984). Plaintiffs interpret this portion of *Garvey* to mean that interest is not payable on contingent obligations. Because Congress has amended the installment sales rules to now encompass contingent payments, and because plaintiff's transaction, for purposes of this analysis, now comes within the scope of § 453, plaintiffs insist that the conclusions found in *Garvey* no longer hold true.

---

**14.** Section 483(f)(5) was repealed in 1984, effective for transactions entered into after December 31, 1984.

**15.** As defendant noted at oral argument, there are also potential problems created by tying together the tax treatment of both parties to the transaction. If a private annuity arrangement arises in an arms-length situation, e.g. where an individual taxpayer owes an annuity obligation to a family corporation that subsequently changes ownership, the obligor is at the mercy of the annuitant. For example, the annuitant has no obligation to divulge to the obligor how it reported its tax return. Additionally, if the annuitant waits until the deadline for filing its tax return, the obligor would then be forced to file for an extension to file its own return.

Cross–Motion of Jonathan P. Rye and Lisa A. Rye for Summary Judgment and Response to Motion of the United States for Summary Judgment (Cross–Motion) at 19.[16]

The court, however, cannot accept plaintiffs' interpretation of *Garvey*, and must find that even though a portion of plaintiff's payment might be considered interest under § 483, such interest is not interest on indebtedness under § 163. The *Garvey* court, relying on a long line of cases, simply found that when an annuity arrangement involves a contingent obligation, no part of such annuity payments are interest on indebtedness under § 163.[17] Stated otherwise, rather than holding that interest is not payable on contingent liabilities, the *Garvey* court held that any interest on a contingent liability is not interest on indebtedness under § 163. Plaintiffs do not dispute that the arrangement in this case is an annuity involving a contingent obligation. Accordingly, under *Garvey*, no portion of plaintiff's payments to John K. Rye is interest on indebtedness and, therefore, it is not deductible under § 163.

Even assuming that a portion of an annuity payment may be deemed interest on indebtedness, it is still not deductible because the full amount of each annuity payment represents a capital expenditure. *Bell v. Commissioner*, 76 T.C. 232, 237 (1981), *aff'd per curiam*, 668 F.2d 448 (8th Cir.1982). As the *Garvey* court stated:

> [A]n expenditure incurred in acquiring capital assets must be capitalized even when the expenditure otherwise might be deemed deductible under [§ 163].

*Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 127 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984) (quoting *Commissioner*

**16.** Although the *Garvey* decision was issued in 1983, three years after the passage of the 1980 Revision Act, the tax years at issue in that case were 1969 through 1977. Therefore, that decision could not have taken into account the effect of the 1980 Revision Act on private annuity tax law. However, despite plaintiffs' skepticism, the court finds it difficult to believe that the *Garvey* court would not have pointed out a change in the law that would have affected its decision, especially given plaintiffs' contention that perhaps thousands of other taxpayers relied on the clear language of the amended § 453(b)(1). Cross–Motion at 11. This finding is bolstered by the fact that the *Garvey* court specifically addressed Congress' failure to legislate changes in the legal treatment of private annuities.

> Far from adopting plaintiffs' theory that in a contract to acquire property in exchange for annuities there is implicit an agreement that only a portion of each annuity is principal and the remainder is interest, there is evidence that Congress has been aware of the contrary decisions of the courts and has either approved or at least has not disapproved them.

*Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 128 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984).

**17.** Under the cases relied on by *Garvey*, interest on indebtedness is generally defined for Federal income tax purposes as "compensation for the use or forbearance of money." *Deputy v. du Pont*, 308 U.S. 488, 497, 60 S.Ct. 363, 368, 84 L.Ed. 416 (1940). In *Bell v. Commissioner*, 76 T.C. 232 (1981), *aff'd per curiam*, 668 F.2d 448 (8th Cir.1982), the court found that where an

annuitant made an absolute assignment of stock to the obligor in exchange for a promise to pay an annuity, thereby forgoing the payment of any definite sum of money, the annuitant did not forbear the collection of any ascertainable amount owed to him by the obligor pursuant to the sale. Neither does an annuity agreement give an obligor the use of an annuitant's funds. Rather, upon the execution of such an agreement, an obligor owns the property and owes nothing except the first payment with an obligation to make additional payments only if the annuitant survives to the date on which additional payments are due. Under such circumstances, the *Bell* court concluded that the annuity obligation was too indefinite to constitute an indebtedness. *Id.* at 238.

Plaintiffs, in their Reply to Defendant's Response to the Cross–Motion (Plaintiffs' Reply) filed December 13, 1990, contend that the cases which the *Garvey* court relied on for the proposition that no interest on indebtedness exists where the liability of the obligor is contingent upon the continued existence of a measuring life no longer govern the tax treatment of annuity obligors after the enactment of § 483. "Thus, by enacting Section 483(d), Congress implicitly recognized that contingent payments, like other deferred payment transactions, should have an interest component and must therefore constitute an 'indebtedness'." Plaintiffs' Reply at 4. Because § 483 was enacted in 1964, and because *Garvey* dealt with post–1964 tax years, 1969 through 1977, the *Garvey* court clearly contemplated the effect of § 483 on the taxation of an annuity obligor. It is not for this court to second guess the reasoning used in *Garvey*. Accordingly, plaintiff's contention has no merit.

*v. Idaho Power Co.*, 418 U.S. 1, 17, 94 S.Ct. 2757, 2767, 41 L.Ed.2d 535 (1974)).

Plaintiffs state that "if no interest exists in an annuity arrangement—due to the lack of 'indebtedness'—it follows that the full purchase price of an asset constitutes a capital expenditure." Cross–Motion at 19. Therefore, plaintiffs assert, the capital expenditure analysis in *Garvey* is merely a restatement of that court's views regarding indebtedness. As such, plaintiffs argue that this analysis is again based upon the *Garvey* court's refusal to recognize contingent obligations as constituting valid debts. Plaintiffs conclude that because the 1980 Revision Act made all contingent payments indebtedness within the meaning of § 163, the holding in *Garvey* does not apply in this case.

The *Garvey* court specifically set forth two reasons why no part of an annuity payment is deductible pursuant to § 163. In addition to a lack of interest on indebtedness, that court clearly held that annuity payments are all capital in nature. "The *entire* amount of each annuity payment constitutes part of the purchase price of the property, *a capital expenditure*, and, therefore, no part thereof is deductible as interest." (Emphasis added.) *Garvey, Inc. v. United States*, 1 Cl.Ct. 108, 127 (1983), *aff'd*, 726 F.2d 1569 (Fed.Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 99, 83 L.Ed.2d 44 (1984). Plaintiffs have simply not shown that the enactment of the 1980 Revision Act has altered the *Garvey* holding that all payments made by an annuity obligor to the annuitant are entirely capital in nature, and are not deductible.

## CONCLUSION

For the reasons discussed above, defendant's motion for summary judgment is granted and plaintiffs' cross-motion for summary judgment is denied.

The clerk shall enter judgment dismissing plaintiffs' claim. No costs.